# Richmond.

## NORFOLK & WESTERN RAILWAY CO. v. DENNY'S ADMINISTRA- TOR, AND SAME v. EDWARD'S ADMINISTRATOR.

### January 17, 1907.

1. DEATH BY WRONGFUL ACT—*Foreign Law—Enforcement.*—A right of action for death by wrongful act given by the law of one state will be enforced in another, if not contrary to the laws or policy of the latter state. The true test in all cases of this nature is this: Is the foreign statute contrary to the known policy or prejudicial to the interests of the state in which the suit is brought? If not, it is immaterial whether the right asserted be given by the common law or by statute.

2. EVIDENCE—*Foreign Laws—Sister State—How Proved.*—Foreign laws are facts, and must be proved unless established by legal presumption. If statutory, the statute itself must usually be produced, or such copy thereof as is approved by the law of the forum. With respect to the common or unwritten law, of a foreign state, the published official reports may be received as competent evidence. They must be offered in evidence in the trial court, and cannot be used for the first time in the appellate court. When so offered it is for the jury to determine whether or not such adjudications have been made in the foreign state, and for the court to construe them, and to deduce the rules of law they establish. For the purposes here stated the states of the union are foreign to one another.

3. EVIDENCE—*Common Law of Sister State—How Proved.*—In the absence of evidence to the contrary it will be presumed that the common law of a sister state is identical with the law of this state on the same subject.

4. RAILROADS—*Walking on Track—Invitees—Licensees—Case at Bar.*— In the absence of other evidence, the mere fact that a contractor is engaged in double tracking a railroad under a contract with the company, and that his servants, for their own convenience, walk along the track in going to and returning from their work, with the knowledge and acquiescence of the company, does not put such servants in the category of invitees of the company.

They may not be guilty of contributory negligence merely because walking on the track, but a higher degree of care is imposed on them to look out for approaching trains or other sources of danger than if they were on the track by express invitation of the company or as a necessary result of their employment by the contractor. In the case at bar there is no evidence that it was "necessary"—that is, unavoidable—that the servants of the contractor should walk on the track.

5. RAILROADS—*Licensees—Relative Duties—Lookout.*—Mere licensees, clothed with no right and having no invitation, who enter upon a railroad track, take upon themselves the ordinary risks of the place. While not trespassers, they must exercise that degree of care for their own safety which the situation demands. The railroad company does not owe them the duty of providing additional force to keep a lookout for them, nor is it bound to make, equip or run its trains, or to construct or repair its tracks with a view to their safety. Its duty is to exercise ordinary care, in the operation of its trains under the conditions actually existing and with such equipment as has been provided, to avoid injuring persons walking on the track at a point where they may be reasonably expected to be found, after it sees or knows their danger or could have known of it by the exercise of reasonable care.

Error to judgments of the Corporation Court of the city of Roanoke in actions of trespass on the case. Judgment for the plaintiff in each case. Defendant assigns error.

*Reversed.*

The following is a copy of the declaration in the action brought by Denny's administrator:

"Declaration.

"Virginia—In the Corporation Court of the city of Roanoke. First June Rules, 1903.

"John R. Denny, administrator of James G. Denny, deceased, duly appointed and qualified as such under the laws of the state

of Virginia, plaintiff, complains of Norfolk and Western Rail-
way Company, a corporation, defendant, of a plea of trespass
on the case, for this—to-wit: That heretofore, to-wit, on the
22d day of November, 1902, the defendant owned and ope-
rated a certain railway extending, in part, from Oakdale, in the
state of West Virginia, to Willis, in said state, over and upon
the track of which the defendant ran locomotive engines and
trains of cars; that on, to-wit, the date aforesaid, and for a
long time, to-wit, one year, prior thereto, on a portion of its
said railway, to-wit, that portion extending from said Oakvale
to a point a considerable distance, to-wit, three miles, east of
said Oakvale, the said defendant caused to be conducted the
repair of said railway and the construction of an additional
track and other improvements to its said railway; and in the
conduct of said operations, on said date and during said period
of time on said portion of said track, a large number of men,
to-wit, two hundred, were constantly employed by the contrac-
tors engaged in said work; and the said employees, while en-
gaged in the discharge of their duties, and in going to and from
their place of work and place of encampment, without objec-
tion from, and with knowledge and acquiescence of, the defen-
dant, constantly used the aforesaid portion of defendant's rail-
way as a walkway; and by reason of the premises it became
and was the duty of the defendant, its agents and servants in
charge and control of its locomotive engines and trains of cars,
while operating and running such locomotive engines and trains
of cars over the aforesaid portion of said defendant's railway,
to keep a reasonable lookout for such of the aforesaid persons
as might be walking on said railway, and to use reasonable care
and prudence in the operation and running of said locomotive
engines and trains of cars to avoid injuring them; and espe-
cially was it the duty of the said defendant, its said agents and
servants, while operating and running its said trains backwards
over said portion of said track to keep some person on the rear
end of such train, whose duty it was especially to keep a lookout

for persons who might be walking on said track and to warn them in some reasonable and adequate manner of the approach of such backing train.

"And the plaintiff avers that the defendant, its agents and servants, aforesaid, carelessly and negligently failed to discharge its aforesaid duties, and that on, to-wit, the said 22d day of November, 1902, while the said James G. Denny, who was one of the men engaged in the operations of construction and repair, as aforesaid, was walking on said portion of said railway going from the place of his encampment to the place of his work, the defendant, its agents and servants in charge and control, carelessly and negligently ran a locomotive engine and train of cars backward over said portion of said track, and carelessly and negligently failed to have any person on the rear end of said train to warn persons of its approach, as it was its duty to do as aforesaid, and carelessly and negligently failed to keep any reasonable lookout or to warn the said James G. Denny, in any reasonable or adequate manner of the approach of said train; and by reason of the carelessness and negligence of the said defendant, its agents and servants, as aforesaid, the said train of cars and locomotive engine was run against, upon and over the said James G. Denny, and he was thereby instantly killed.

"And the plaintiff avers that there was at the time of the death of the said decedent, James G. Denny, and still is, a statute of West Virginia relative to the liability of persons and corporations for damages in case of injury by negligence causing death, substantially the same as the statute of Virginia upon the subject, which said statute of West Virginia is in the words and figures following—to-wit:

" '5. Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damage in respect thereof; then, and in every such case, the person who, or

the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to murder in the first or second degree, or manslaughter.

" '6. Every such action shall be brought by and in the name of the personal representative of such deceased person; and the amount recovered in every such action shall be distributed to the parties and in the proportion provided by law in relation to the distribution of personal estate left by persons dying intestate. In every such action the jury may give such damages as they shall deem fair and just, not exceeding ten thousand dollars, and the amount so recovered shall not be subject to any debts or liabilities of the deceased; provided, that every such action shall commence within two years after the death of such deceased person.'

"2. And for this, to-wit: That heretofore, to-wit, on the 22d day of November, 1902, the said defendant owned and operated a certain railway extending, in part, from Oakvale, in the state of West Virginia, to Willis, in said state, over and upon the track of which the said defendant ran locomotive engines and trains of cars; that a large portion of the said railway, to-wit, that portion lying between Oakvale and a point a considerable distance, to-wit, three miles east thereof, was, on the date aforesaid, and had been for a long time, to-wit, one year, prior thereto, used by the public as a walkway without objections from, and with the knowledge and acquiescence of, the said defendant; and by reason of the premises it became and was the duty of the said defendant, its agents and servants in charge and control of its locomotive engines and trains of cars, while operating and running such locomotive engines and trains of cars over it the aforesaid portion of said defendant's railway, to keep a reasonable lookout for pedestrians walking along said portion of its railway, and to use reasonable care and prudence to avoid injurying them.

"And the said plaintiff avers that on, to-wit, the date afore-said, while the said James G. Denny, was walking on and along said portion of said railway, at a point a considerable distance, to-wit, one mile east of said Oakvale, the said defen-dant, its agents and servants, in charge of, operating and run-ning the said defendant's locomotive engine and train of cars, eastwardly, over said portion of said railway, carelessly and negligently failed to perform their duty as aforesaid, and care-lessly and negligently ran the said engine and train of cars against, upon and over the said James G. Denny, and thereby instantly killed him.

"And the plaintiff avers that there was at the time of the death of the said decedent, James G. Denny, and still is, a statute of West Virginia relative to the liability of persons and corporations for damages in case of injury by negligence caus-ing death substantially the same as the statute of Virginia upon the subject, which said statute of West Virginia is in the words and figures following—to-wit:

" '5. Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damage in re-spect thereof; then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstand-ing the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to murder in the first or second degree, or manslaughter.

" '6. Every such action shall be brought by and in the name of the personal representative of such deceased person; and the amount recovered in every such action shall be distributed to the parties and in the proportion provided by law in relation to the distribution of personal estate left by persons dying in-testate. In every such action the jury may give such damages as they shall deem fair and just, not exceeding ten thousand

dollars, and the amount so recovered shall not be subject to any debts or liabilities of the deceased; provided, that every such action shall commence within two years after the death of such deceased person.'

"3. And for this also, to-wit: That heretofore, to-wit, on the 22d day of November, 1902, the said defendant owned and operated a certain railway extending, in part, from Oakvale, in the state of West Virginia, to Willis, in said state, over and upon the track of which the said defendant ran locomotive engines and trains of cars; that a large portion of the said railway, to-wit, that portion lying between Oakvale and a point a considerable distance, to-wit, three miles east thereof, was, on the date aforesaid and had been for a long time, to-wit, one year, prior thereto, used by the public as a walkway without objections from, and with the knowledge and acquiescence of, the said defendant.

"And the said plaintiff avers that on, to-wit, the date aforesaid, while the said James G. Denny was walking on and along said portion of said railway, at a point a considerable distance, to-wit, one mile east of said Oakvale, the said defendant, its agents and servants, in charge of, operating and running the said defendant's locomotive engine and train of cars eastwardly, over said portion of said railway, carelessly and negligently ran the said engine and train of cars against, upon and over the said James G. Denny, and thereby instantly killed him.

"And the said plaintiff avers that by reason of the premises as set forth in the foregoing three counts of this declaration, and in each of them, an action hath accrued to the said plaintiff to have and recover damages of the said defendant, in pursuance of the statute for such cases made and provided; and that he has sustained, is entitled to recover and demands damages in the sum of ten thousand dollars ($10,000). And therefore he brings his suit.

"And the plaintiff avers that there was at the time of the death of the said decedent, James G. Denny, and still is, a

statute of West Virginia, relative to the liability of persons and corporations for damages in case of injury by negligence causing death substantially the same as the statute of Virginia upon the subject, which said statute of West Virginia is in the words and figures following—to-wit:

" '5. Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof; then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to murder in the first or second degree, or manslaughter.

" '6. Every such action shall be brought by and in the name of the personal representative of such deceased person; and the amount recovered in every such action shall be distributed to the parties and in the proportion provided by law in relation to the distribution of personal estate left by persons dying intestate. In every such action the jury may give such damages as they shall deem fair and just, not exceeding ten thousand dollars, and the amount so recovered shall not be subject to any debts or liabilities of the deceased; provided, that every such action shall be commenced within two years after the death of such deceased person.' "

Upon the trial of the cause the court instructed the jury as follows:

"1. The court instructs the jury that if they believe from the evidence the defendant company contracted with contractors to do certain double tracking for it between Oakvale and Willis, and further believe from the evidence that it was contemplated in said contract that the men engaged in said work should use the track of said company in going to and from said work, or

that such use of said track was practically necessary in order to accomplish said work, such use of said track by the employees of said contractors did not constitute said employees either trespassers or mere licensees, but they were there by invitation of the company. If, on the contrary, the jury believe from the evidence that such use was neither contemplated nor practically necessary, as aforesaid, then the mere use of said track by said employees, even with the company's knowledge, whether for the sake of convenience or otherwise, constitutes them mere licensees, and as such the defendant owed them the same duty as to trespassers.

"2. The court instructs the jury that if they believe from the evidence that the defendant, or its agents and servants in charge of and operating its work train, had knowledge that the defendant's track had been for a considerable time and still was in constant and daily use by a large number of the employees of the contractors who were engaged in work upon defendant's track, or its agents and servants in charge of its train, might reasonably have expected said employees to be upon the track at the time and point that the plaintiff's decedent was killed, it was the duty of the defendant, its agents and servants in charge of and operating its train, to use reasonable care to discover and not to injure them; and, if by the exercise of reasonable care the defendant, its agents and servants operating said train, could have discovered said decedent and avoided injury to him, it was their duty to do so, and a failure to discharge that duty would be negligence, for which the defendant would be liable of the character charged in the declaration, and provided such negligence was the proximate cause of the injury; and provided further, the plaintiff's intestate was not guilty of any contributory negligence other than merely walking on the defendant's track.

"3. The court instructs the jury that if they shall believe from the evidence that the plaintiff's decedent, along with other employees of the contractors, was in the habit of walking on

defendant's track in going to and from their place of work with the knowledge and acquiescence of the defendant, and if they further believe from the evidence that at the time he was killed he was going to his work on defendant's track, then his mere presence there upon the track did not constitute him a trespasser nor of itself constitute contributory negligence; and, if you believe from the evidence that the defendant, or its agents and servants in charge of its train should have apprehended the presence of such employees upon the track by reason of the large number of persons using same, it was their duty to have kept a reasonable lookout for them, to avoid injuring them, and to have given reasonable notice or warning to such employees of the approach of said train, and a failure to perform either duty would be negligence.

"The jury must further believe, however, that such negligence was the proximate cause of the injury, and that the plaintiff was not [guilty] of contributory negligence before they can find against [for?] the plaintiff.

"4. The court instructs the jury that if from the evidence in this case they believe that by and with the knowledge of the defendant its track at the point and time of the accident was constantly used by the employees of the contractors, and that defendant might reasonably have expected that such employees might be on its track, then said defendant owed the duty of taking reasonable care to discover and not to injure any such person whom it might reasonably expect to be on its track at that point; and if the jury believe from the evidence in this case that the servants of the defendant in charge of its trains could in the exercise of reasonable care under the circumstances surrounding them at the time, by having a proper lookout, have discovered the danger of the plaintiff's intestate in time to avoid the accident, and that said defendant negligently failed to have a proper lookout, and this failure was the proximate cause of the death of plaintiff's intestate, and that there was no contributory negligence on the part of the plaintiff, then they must find

for the plaintiff.   *C. & O. Ry. Co.* v. *Rogers,* 100 Va. 333, 334.

"5. The court instructs the jury that if they believe from the evidence that the plaintiff's decedent was, at the time of his death, on defendant's track in conformity with the habit of himself and other employees of the contractors in going to and from their work on defendant's road, which habit was known to and acquiesced in by the defendant, it was his duty, while on said track, to use reasonable care to avoid being injured by the defendant's train; and reasonable care is such care and caution as a man of ordinary prudence would exercise for his own protection under the same circumstances, in view of the danger to be avoided, and includes the duty of looking and listening for approaching trains. *N. & W.* v. *Bradford,* 99 Va. 120.

"6. The court further instructs the jury that even if they should believe from the evidence in this case that the plaintiff's intestate was himself guilty of contributory negligence in going upon defendant's track, yet if they believe from the evidence that the defendant knew that its track at this time and point was being constantly used as a pass-way by the employees of the contractors in going to and from their work, and could or should by the exercise of reasonable care have discovered the perilous position of the plaintiff's intestate on its track, by having proper lookout, or could have warned him of the approach of the train in time to avoid the accident, but negligently failed to do so, and by reason of such failure the plaintiff's intestate was run over by its train and killed, then they must find for the plaintiff, unless the jury further believe the plaintiff was guilty of contributory negligence other than merely going upon the track, in which case the jury must find for the defendant.

"7. The court instructs the jury that contributory negligence is a matter of defense, and that the burden rests upon the defendant to prove it, unless it appears from the plaintiff's evidence; and, in determining whether or not the plaintiff's in-

testate was guilty of such contributory negligence, they should consider all the evidence which has been adduced, both plaintiff's and defendant's, and all the facts and circumstances of the case.

"8. The court instructs the jury that if they shall find for the plaintiff, then in fixing the damages they should take into consideration all of the facts and circumstances of the case, as shown by the evidence, and fix the damages at such sum as they deem just and proper in the light of the whole evidence, not to exceed the sum of ten thousand dollars in either case.

"9. The court instructs the jury that the table of expectancy of life given in evidence by the plaintiff, by which it appeared that the expectory life of Nathaniel N. Edwards was 23.1 years, and that of James G. Denny was 18.8 years, is not conclusive or binding upon the jury, but is only evidence to be considered by them along with all the other evidence in the case in arriving at the amount of damages, if any.

"10. The court instructs the jury that if they believe from the evidence that the plaintiffs' intestates were employed by the contractors who were working upon the right of way of the defendant company and near its line of tracks, at some point east of the camp at which the said parties boarded, and that in going to and from their work they had the choice of going by several different routes and were not compelled to go along the eastbound track, upon which the train by which they were killed was going, and that they went upon said eastbound track simply as a matter of convenience, and not by invitation as defined in instruction No. 1, then they cannot claim that the company owed them any higher duty than it would owe to a trespasser upon its track, and the court further instructs the jury that the only duty which the defendant company owed a trespasser upon its tracks is to use such care as a prudent man would use under the circumstances to avoid injury to said trespasser, after the employees of said company had such notice of their danger as would put a prudent man on his guard, and

it is not necessary that the defendant should actually know of such trespasser's danger. *Tucker's Admr.* v. *N. & W.,* 92 Va. 549.

"11. The court instructs the jury that a person going upon the tracks of a railroad company and walking along the same is bound to listen and keep a lookout in each direction for approaching trains, so that, if the jury believe from the evidence that the plaintiffs' intestates in these cases entered upon the tracks of the defendant company at the point mentioned in the declaration and were walking along the same at the time of the accident, and that they did not listen nor keep a lookout for trains approaching them from each direction, and that on account of their failure so to listen and to keep a lookout they did not get off the track in time to avoid the work train mentioned in the evidence as it approached them, and that this was the proximate cause of the accident to and death of the plaintiff's intestates, then they must find for the defendant. *Savage* v. *So. Ry. Co.,* 49 S. E. 484, and cases there cited.

"12. The court further instructs the jury that if they believe from the evidence that the plaintiff's intestates, Denny and Edwards, on the morning of the accident which resulted in their death, were walking along the eastbound track of the company, and if they further believe from the evidence that prior to that time they and other employees of the contractors by whom they were employed, were in the habit of walking along said track with the knowledge and without objection on the part of the defendant railway company, yet, if they simply used this track as a matter of convenience and that they were not there by invitation as defined in instruction No. 1, then they must be considered mere licensees, and in such case when they entered upon said track and walked along the same they took upon themselves all the ordinary risk attached to the place and the business carried on there. And the defendant company had the right, so far as said parties were concerned, to run its train backwards and forward and at such rate of speed as was customary under the

circumstances, and unless the plaintiffs show by a preponderance of evidence that the defendant or its agents either intentionally or wilfully injured the said parties as they were walking along said track, or that, after they saw or knew of their danger, or by the exercise of ordinary care would have known of their danger, they could have avoided injuring them, then they must find for the defendant company. *N. & W.* v. *Wood,* 99 Va. 156, 159; *Spicer* v. *C. & O.* (W. Va.), 12 S. E. 555.

"13. The court instructs the jury that the burden of proving negligence is upon the plaintiffs in both of the causes which are being tried before them, and that negligence must be proved by affirmative evidence which must show more than a probability of a negligent act; a verdict cannot be found upon mere conjecture, and there must be affirmative and preponderating proof that the injury from which Denny and Edwards died would not have occurred except through the negligence of the defendant company or that of its agents in the manner charged in the declaration. Affirmative evidence, however, may be direct evidence of any fact or any reasonable inference therefrom. *N. & W. Ry. Co.* v. *Cromer,* 99 Va. 777; *N. & W. Ry. Co.* v. *Cromer,* 101 Va. 667; *C. & O. Ry. Co.* v. *Sparrow's Admr.,* 98 Va. 630.

"14. The burden of proving that the defendant company was negligent is upon the plaintiffs, and they must prove this by a preponderance of evidence, and the mere fact of the plaintiffs' intestates having been found dead upon the tracks of the defendant company is not sufficient by itself to establish actionable negligence on the part of the defendant company nor to raise a presumption of such negligence. *So. Ry. Co.* v. *Back's Admr.,* 50 S. E. 257-8.

"15. The court instructs the jury that if they believe from the evidence that the brakeman or conductor who were on the end of the lead car of the work train saw Denny and Edwards walking on the railroad track in front of the moving train, and there was nothing about their appearance or manner to indicate

that they were not aware of their danger that they had the right to presume that the said Denny and Edwards would exercise reasonable care and prudence to avoid danger, and would get off of the said track in time to avoid the approaching train, and it was not their duty to undertake to protect said Denny and Edwards until they saw that the said Denny and Edwards would not get off the said track and were in a position of danger. *Humphrey's Admr.* v. *Valley R. Co.,* 100 Va. 749."

*Robertson & Wingfield,* for the plaintiff in error.

*Lee & Howard* and *James P. Harrison,* for the defendant in error.

KEITH, P., delivered the opinion of the Court.

The intestates of plaintiffs were engaged in construction work upon the line of the Norfolk and Western railway in West Virginia, and these actions are brought to recover damages for negligence on the part of the railway company causing their death.

The declaration contains three counts, in each of which the West Virginia statute is set out at large:

"Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to murder in the first or second degree, or manslaughter.

"Every such action shall be brought by and in the name of the personal representative of such deceased person; and the

amount recovered in every such action shall be distributed to the parties and in the proportion provided by law in relation to the distribution of personal estate left by persons dying intestate. In every such action the jury may give such damages as they shall deem fair and just, not exceeding $10,000, and the amount so recovered shall not be subject to any debts or liabilities of the deceased; provided, that every such action shall commence within two years after the death of such deceased person."

There was a demurrer to this declaration and to each count thereof, which was overruled by the trial court. We shall not notice specifically any of the grounds of demurrer except the fifth, which states that "The declaration does not, nor does any count thereof, allege that under the law of West Virginia it was the duty of the defendant company to do and perform the matters and things alleged to be the company's duty in the premises."

In *Nelson's Admr.* v. *C. & O. R. Co.,* 88 Va. 971, 14 S. E. 838, 15 L. R. A. 583, this court said: "There is no doubt that in a general sense a statute can have no operation beyond the state in which it is enacted. But where a right to sue is given by statute in one state we can see no good reason why an action to enforce that right should not be entertained in the courts of another state, on the ground of comity, just as if it were a common-law right, provided, of course, it be not inconsistent with the laws or policy of the latter state. If this were not so, a cause of action of any sort arising in a state whose laws are codified could not be asserted in another state because the right to sue is statutory. The true test, therefore, in all such cases would seem to be this: Is the foreign statute contrary to the known policy, or prejudicial to the interests, of the state in which the suit is brought? And if it is not, then it makes no difference whether the right asserted be given by the common law or by statute." In *Dennick* v. *Railroad Co.,* 103 U. S. 11, 26 L. Ed. 439, quoted from in the case just cited, Mr. Justice

Miller says: "It is difficult to understand how the nature of the remedy, or the jurisdiction of the court to enforce it, is in any manner dependent on the question whether it is a statutory right or a common-law right. Whenever, either by the common law or the statute law of a state, a right of action has become fixed, and a legal liability incurred, that liability may be enforced and the right of action pursued in any court which has jurisdiction of such matters and can obtain jurisdiction of the parties." Judge Lewis cites a great number of cases in support of his opinion, to which we refer.

In Minor on Conflict of Laws, page 25, it is said: "At one time it was thought that statutes giving the right to recover for the death of a person by wrongful act were penal, and not enforceable in other states; but this view has long since been rightly overruled, and it is now universally held that such statutes are remedial, conferring a special remedy, and, therefore, enforceable abroad."

And just here it may be as well to anticipate what we deem it necessary to say upon the subject of the laws of West Virginia.

"Foreign laws are matters of fact, and like other facts should be proved, unless established by legal presumptions. A court will not take judicial notice of their existence or of their terms. And for this purpose the states of this union are foreign to one another. . . .

"Primarily, the mode of proving a foreign law depends upon its nature, as statutory or common law, written or unwritten. If the law which is to be proved is statutory the statute itself must usually be produced, or such copy thereof as may be approved as evidence under the law of the forum. The judicial decisions of the state whose law is to be proved are not usually to be received in evidence to prove what is its statute law (for they are not the best evidence), but they should be looked to in order to determine the proper construction of such foreign statutes after they have been otherwise established. And this is

true though the same provisions in the statutes of the forum have been construed differently there.

"With respect to the common or unwritten law of a foreign state or country the general rule is that it is to be proved by the best evidence the nature of the case will admit of. This rule was formerly construed to require as a usual thing that such unwritten law must be proved by the testimony of legal practitioners of the foreign state or other persons learned in its laws. It was thought inadmissible to introduce the reports of cases adjudged in a particular state as evidence of the common law of that state. But in recent years the opinions of the courts have undergone a change in this respect, and it is now pretty generally conceded that the published official reports of adjudged cases are competent evidence for this purpose. In such cases it is the province of the jury to determine whether or not such adjudications have been made in the foreign state, but it is the duty of the court to construe them and to deduce the rules of law they establish. And such decisions must be presented in evidence at the trial. They cannot be used for the first time in an appellate court." Minor on Conflict of Laws, pages 528, 529, 530.

And summing up the discussion of this subject, on page 532, the author concludes "that the decided trend of American decisions is toward the presumption, in the absence of contrary evidence, that the foreign law under which either party claims is identical with the *lex fori.*"

We are of opinion that the demurrer to the declaration was rightly overruled; and that, with respect to the laws of West Virginia, there is no proper proof in respect to them, except as to the statute which gives the remedy and which is averred in the declaration, and that, except as to that statute, the law of West Virginia applicable to this case is to be presumed to be identical with the law of this state upon the same subject.

It was agreed by counsel that the two cases of Denny's administrator against the railroad, and Edwards' administrator against

the railroad should be tried before one jury; that the evidence should be considered as introduced in each case; that separate verdicts should be found by the jury in each case; and that, in case of appeal, one record should be made up and one petition presented, which should be considered as made in each case.

The evidence tends to prove that Denny and Edwards were, at the time of the accident, employees of certain contractors engaged in the construction of a railroad track extending from Oakvale, in the state of West Virginia, to Willis, in that state; that the camp occupied by the employees was three or four hundred feet from the railroad track, and that there were from one to two hundred persons engaged upon the work; that the work of construction had progressed until the part of the track upon which they were engaged at the time of the accident was about half a mile east of the camp; that upon the day of the accident Denny and Edwards got upon the track and were walking in the direction of the place where they were to be employed during the day; that this part of the track was used by the employees with the knowledge of the railway company, and had been so used during the whole time the work of construction had been going on continuously, and without objection from any quarter; that on the morning of the accident, after these men had gotten upon the track, a coal train, moving from the west towards the east, in the direction in which they were walking, came along, but as it had sounded its whistle at a station a short distance to the west Denny and Edwards stepped from the track and it passed on, doing them no injury. They returned to the track as soon as this coal train had passed and had walked but a short distance when they were struck by a construction train and killed. This construction train consisted of two or three dirt cars, a box car, and an engine. It also was moving from the west toward the east, the dirt cars being in front as the train moved, pushed by the engine, which was in the rear. The morning is described as being dark and gloomy; the time, just before or about sunrise on the 22d of November, and persons walking

along the track could be indistinctly seen at a distance of from 75 to 100 yards. There is evidence of a negative character to the effect that no bell was rung and no whistle sounded, and with respect to these facts it may be that the evidence was of such character as to create a conflict, in accordance with *Bryant's Admr. v. So. Ry. Co.*, 95 Va. 212, 28 S. E. 183, to be determined by the jury. With respect to the light the evidence seems to be that while there was none upon the dirt cars, which were in front and nearest to the persons injured, a brakeman upon the box car did have a light. There was evidence also that there were paths alongside the railroad track leading to the place at which the men were at work, and a road running from the camp in the same direction, but which necessitated a considerable detour and the crossing of lands as to which there is no proof that the employees had any license except that they were permitted by the owners to drive the mule and carts over them for certain purposes. It appears also that these means of access to the work were less convenient than the railroad track, the road referred to being more circuitous, and the paths being rough and uneven; so that it had been the custom for months for the employees of the contractors to use the railroad track in passing from the camp to the place at which they were employed, the point at which the daily work was to be performed moving gradually to the east as the work upon the track progressed from day to day.

Upon this state of facts the plaintiffs and the defendant asked the court to instruct the jury; and the court, taking these prayers for instructions as the basis for its action, gave to the jury fifteen instructions of its own.

The first instruction states that if the jury "believe from the evidence that the defendant company contracted with contractors to do certain double-tracking, and further believe from the evidence that it was contemplated in said contract that the men engaged in said work should use the tracks of the company in going to and from said work, or that the use of said track was

practically necessary in order to accomplish said work, such use of said track by the employees of said contractors did not constitute said employees either trespassers or mere licensees, but they were there by invitation of the company." There is no proof of the terms of the contract between the defendant company and the contractors. There is proof, and abundant proof, that there was a contract between the contractors and the defendant company, and that Denny and Edwards were the employees of the contractors. The object of this instruction is to take the persons injured out of the category of mere licensees, and to place them upon the railroad track by the invitation of the company, thus changing the nature of the duty owed to them by the railroad company, when there is no evidence of any such fact. Nor is there any evidence that the use of the railroad track as a passway was necessary to the accomplishment of the work upon which the employees were engaged. There is evidence that the track was a more convenient way of reaching the work. One of the grounds of defense was that plaintiffs' intestates were guilty of contributory negligence in going on the track and in failing to keep a reasonable lookout for approaching trains; but if it was necessary to go on the track in order to do the work which they were employed to do, that necessity would be the equivalent of an invitation. We do not mean to say that walking upon the track, under the circumstances, was in itself proof of contributory negligence; but it did impose upon them a higher degree of care in looking out for approaching trains, or for any other source of danger than would have been the case had they been upon the track by the express invitation of the company, or as a necessary result from the fact of employment, in either of which cases the duty imposed upon the railroad company to look out for their safety would have been in a corresponding degree increased.

The word "necessary" is somewhat elastic in its meaning. It may mean "such as must be"; "impossible to be otherwise"; "not to be avoided"; "inevitable." *Webster's Dict.* Or it may

mean that one thing is convenient, or useful, or essential, to another. *Bour. Law Dict.* It is plain from the context that in the instruction under consideration it was used in its primary sense, as given by Webster, *suprâ.* For in the next branch of the instruction it is said: "If, on the contrary, the jury believe from the evidence that such use was neither contemplated nor practically necessary, as aforesaid, then the mere use of said track by said employees, even with the company's knowledge, whether for the sake of convenience or otherwise, constitutes them mere licensees, and as such the defendant owed them the same duty as to trespassers."

The second instruction is as to the duty owed by the railroad company to the persons injured, regarding them as mere licensees. The decisions of this court have established that mere licensees entering upon the premises of another take upon themselves the ordinary risks attendant upon the situation as it exists. By "mere licensees" we mean those who are clothed with no right, and to whom no invitation has been extended, but who are upon the premise of another by permission or acquiescence. Our decisions establish it to be the duty of a railroad company with respect to mere licensees, where there is reason to expect their presence in a position of danger upon the track, as where it is known to a railroad company that its track is habitually used as a passway, to use ordinary care for their safety and to do whatever may be within its power to avoid injury after their position of danger is known. While such licensees have no right to expect that railroad companies shall make, or equip, or run their trains, or construct or repair their tracks with a view to their safety, yet it is the duty of the railroad company in the operation of its trains, under such conditions as exist and with such equipment as has been provided, to exercise ordinary care to avoid injuring persons walking upon that track after it saw or knew of their danger, or could have known of it by the exercise of reasonable care. *N. & W. Ry. Co.* v. *Wood,* 99 Va. 156, 37 S. E. 846; *C. & O. Ry. Co.* v. *Rogers,* 100 Va. 333, 41 S. E.

732; *C. & O. Ry. Co.* v. *Farrow's Admr., ante,* page 137, 55 S. E. 569.

In *N. & W. Ry. Co.* v. *Wood, supra,* the rule with respect to bare licensees is stated to be that "One who is permitted by the passive acquiescence of a railroad company to come upon its depot platform for his own purposes, in no way connected with the railroad company, is a bare licensee, who, though relieved from the responsibility of a trespasser, takes upon himself all the ordinary risks attached to the place and the business carried on there."

In *Hortenstein* v. *Virginia-Carolina Ry. Co.,* 102 Va. 914, 47 S. E. 996, it is said: "A railroad company does not owe to trespassers or to bare licensees the duty of providing reasonably safe appliances, and such a party cannot complain though the appliances be ever so unsafe. Nor does it owe them the duty of giving notice of a change of schedule of its trains, or their rate of speed, nor of sounding crossing signals." See also *Walker's Admr.* v. *Potomac & Fredericksburg R. Co.,* 105 Va. 226, 53 S. E. 113.

In *N. & W. Ry. Co.* v. *Stegall's Admx.,* 105 Va. 538, 54 S. E. 19, it was held that "A railroad company does not owe the duty of prevision to a bare licensee on its tracks, nor does it owe him the duty of employing competent servants to manage its trains, or to run them in any particular manner, or at a particular rate of speed."

A licensee, while not regarded as a trespasser, must, when upon the track of a railroad, exercise that degree of diligence for his safety which his situation requires. He is there by permission, and is not a trespasser. The railroad company must exercise reasonable care to do him no injury, and he must use reasonable care for his own protection, and is required vigilantly to look and listen both in front and rear for approaching trains. Shearman & Redfield on Neg., section 480.

We do not think there is any error in the court's instructions Nos. 2 and 3. Nor is there any error in instruction No. 4,

unless it be in the use of the words "by having a proper lookout." If the court meant to say that it was the duty of the employees of the railroad company upon the train, under the circumstances, to take reasonable care to discover and not to injure any person whom they might reasonably expect to be on the track at that point, the instruction would be free from objection, but would seem to be unnecessary in view of instructions Nos. 2 and 3, which would then cover the same proposition. If, however, the court meant to say that it was the duty of the railway company to provide additional force in order to keep a proper lookout, then it would be erroneous; and at a future trial it would be well for the court to guard against what seems to be, at the least, ambiguity of expression.

We see no objection to the fifth, sixth, seventh, eighth and ninth instructions given by the court. The tenth instruction must fall with instruction No. 1, to which it refers. We see no objection to instruction No. 11. No. 12 is amenable to the same objection taken to Nos. 1 and 10, and must fall with them. We find no objection to the law as stated in Nos. 13, 14 and 15, which are approved.

Without passing upon the facts we are of opinion that for errors in the instructions the judgment should be reversed and a new trial awarded.

*Reversed.*