# CIRCUIT COURT OF THE CITY OF WINCHESTER

Mary E. Harter

    v.

Quade et al.

December 31, 1985

Case No. (Law) 84-L-48

By JUDGE HENRY H. WHITING

In this case five health care providers contend that a failure to comply with the notice provisions of a Medical Malpractice Rule precludes a trial upon the merits of a claim for personal injury arising out of the alleged negligent failure of two orthopedic surgeons to diagnose and properly treat a bacterial condition causing a progressive degeneration of the claimant's spine, resulting in a partial paralysis of the legs and of the neurological surgeon in later performing contra-indicated laminectomies thereafter resulting in complete paralysis of her legs.

I felt the research and argument was not as thorough as necessary to decide the matter and had additional research done by the Court Legal Research Assistance Project and did some of my own, delaying this opinion.

Virginia Code Section 8.01-581.2 provides in paragraph A:

> No action may be brought for malpractice against a health care provider unless the claimant *notifies such health care provider* in writing or by certified mail prior to commencing the action. (Emphasis added.)

10

Virginia Code Section 8.01-581.11 authorizes the Chief Justice to "promulgate all necessary rules and regulations to carry out the provisions of this Chapter." Pursuant to that authorization, Rule Two (e) provides:

Multiple Parties - *If a claim arising out of the same incident is asserted against more than one health care provider, the notice of claim shall name all of them and shall be filed with all of them.* Any health care provider so named shall have the right to request a panel and, in that event, shall mail copies of its request to the other health care providers named in the notice of claim as well as to the claimant and his counsel of record. When a request for a medical review panel is made by any party, a single panel shall be designated and all health care providers against whom a claim is asserted shall be subject to the jurisdiction of such panel. (Emphasis added.)

Separate notices of claim were sent to the two orthopedic surgeons on February 16, 1984, to the neurosurgeon on February 17, 1984, and to their respective professional corporations on March 7, 1984, referring to the statutory notice requirement but making no reference to the notice requirement of the Rule. Most of the notices failed to name the other health care providers and did not describe any alleged malpractice committed by those other health care providers. No health care provider received a copy of the notice to any of the other health care providers. These notices seem to be prepared in careful conformity with the statute but in apparent ignorance of the Rule.

All of the health care providers contend that the plaintiff has failed to comply with the provisions of Rule Two (e), thereby divesting this Court of jurisdiction since they were not notified in the manner required by that Rule and the provisions of the above statute providing that "no action may be brought for malpractice" unless such notice is given. The Court told counsel at the pretrial hearing that the Rule seemed to clearly cover this situation and, if valid, would appear to bar the claim. Additional plaintiff's counsel have been associated and

have filed a memorandum setting forth a number of reasons why the Court should not dismiss the action for failure to give the notice in the manner required by Rule Two (e). They will be dealt with *seriatim* although I have restated the headings to get a correct focus on the issues.

I. *The notice complied with the statutory requirement, and Rule Two (e) did not and could not validly increase that requirement.*

Following the statute literally, the writing did "notice [each] health care provider. . . [of] the time of the alleged malpractice and [give] a reasonable description of the act or acts of malpractice [of such health care provider]." It did *not* notify *any* health care provider of any claim being made against any other health care provider, nor was it filed with any other health care provider, and no amount of liberality of construction can burst the bounds of the plain requirement of Rule Two (e) that this "notice of claim shall name all of them and shall be filed with all of them."

Thus we are driven to the necessity of deciding whether paragraph (e) of this Rule was authorized by the Legislature to be adopted by the Chief Justice and if its provisions conflict with the express terms of the notice statute.

The delegation of authority to promulgate the Medical Malpractice Rules is to the Chief Justice under Virginia Code Section 8.01-581.11 and not to the Court, as provided by Article VI, Section 5, of the Constitution of Virginia. In my view, either delegation is subject to the same basic requirements that any rule promulgated (1) "shall not be in conflict with the general law," Virginia Constitution, Article VI, Section 5, or any statute, Virginia Code Sections 8.01-3(D) and 8.01-4; *Turner v. Commonwealth*, 221 Va. 513, 519 (1980), if a delegation to a judicial officer or (2) not in conflict with statute if a delegation to an administrative officer,[1] Section 300, *Administrative Law*, 2 Am. Jur. 2d 127. Thus we need not decide whether

---

[1] For a case where a delegation to a judge was held to be an administrative function, see Thompson v. Smith, 155 Va. 367 (1930).

the rule-making authority is delegated to the Chief Justice as a judicial or an administrative officer; the requirements are the same.[2] Additionally, it should be noted that the rule cannot "restrict. . . the statute contrary to its meaning." *Ibid*.

The Legislature added the word "necessary" to the authority delegated in the Chief Justice in Section 8.01-581.11 to "promulgate all *necessary* rules and regulations to carry out the provisions "of" (emphasis added) the Medical Malpractice Act; the word "necessary" is not in either of the other rule-making delegations to the various courts. Sections 8.01-3, 8.01-4, Virginia Code. Therefore, we must first decide whether the "multiple defendant" notice Rule was "necessary to carry out the provisions of the Act."

"Necessary" is defined in *Webster's New International Dictionary* (2d ed.) as: "1. Essential to a desirable or projected end or condition; not to be dispensed without loss, damage, inefficiency or the like. . ."

*Black's Law Dictionary*, referring to *McCulloch v. Maryland*, 4 Wheat. 316, 413, 4 L.Ed. 579, says:

> As used in jurisprudence, the word "necessary" does not always import an absolute physical necessity, so strong that one thing, to which another may be termed "necessary," cannot exist without that other. It frequently imports no more than that one thing is convenient or useful or essential to another. To employ the means *necessary* to an end is generally understood as employing any means calculated to produce the end, and not as being confined to those single means without which the end would be entirely unattainable. (Emphasis in original.)

Virginia has recognized the elasticity of the term in *Norfolk and Western Ry. v. Denny*, 106 Va. 383, 403-404 (1907):

---

[2] I have not researched this but suspect that delegations to administrative officers, rather than to judicial bodies, may be more strictly construed.

The word "necessary" is somewhat elastic in its meaning. It may mean "such as must be"; "impossible to be otherwise"; "not to be avoided"; inevitable." *Webster's Dict.* Or it may mean that one thing is convenient, or useful, or essential, to another. *Bouv. Law Dict.* It is plain from the context that in the instruction under consideration, it was used in its primary sense, as given by *Webster, supra.*

Before the enactment of Chapter 21.1, claims for malpractice were treated just as any other claim for negligence. There were no proscriptions on the right to sue except statutes of limitations applicable to all claims for negligence. This chapter was enacted for a number of good reasons, among which were an attempt to protect health care providers against the bad publicity attendant upon frivolous malpractice claims by screening those claims through a panel, discouraging a future action if the panel decision was adverse, yet affording an opportunity to a meritorious claimant of securing expert medical evidence which might not otherwise have been available. It is certainly convenient to require that all health care providers be named jointly in the notice of claim if they are going to be proceeded against jointly so as to avoid the extra trouble and inconvenience of checking names and dates of incidents to avoid naming separate panels for each health care provider and discovering later that the claims should be heard by one panel. The Court has no doubt of the authority of the Chief Justice to combine any group of malpractice claims to be heard by one panel after separate claims are filed if "arising out of the same incident" but has considerable trouble with a preliminary requirement that all providers be named jointly, especially where such a requirement results in the loss of a cause of action.

The statute did, as counsel for one of the defendants has aptly said in oral argument before the Court, erect a "gate" through which every claimant must pass before entering the field in which redress may be sought at common law ‹for medical malpractice. Adopting that metaphor, the question here is whether the Legislature has authorized the promulgator of the rules to erect yet another gate

before that field might be entered. Obviously any rule placing an additional restriction upon a cause of action which existed at common law depriving one of her right of action ought to receive a strict construction as to its source of authority. I conclude that the Legislature inserted the word "necessary" advisedly, and this requires me to construe it in its primary sense. I believe that the Chief Justice could effectively administer this statute without the "multiple defendant" notice requirement and therefore the Rule was unnecessary and beyond his rule-making authority.

Tied into the above holding but as an alternate ground, I also believe that the Rule is in direct conflict with the notice provisions of the statute. The *only* statutory "gate" for notice is to "such health care providers," Section 8.01-581.2, Virginia Code, and the additional "gate" of notice "nam[ing] all of them and [to be] filed with all of them," Rule Two (e), it in my ·opinion, in conflict with the plain language of the statute, imposing an additional restriction in conflict with the statute and therefore invalid. *Davis v. Sexton*, 211 Va. 410 (1970).

For these reasons, I do not think the Rule can be enforced. In case I am reversed in this ruling, I am disposing of the other grounds in this opinion to expedite matters.

II. *Alleged waiver of objection to notice.*

The plaintiff argues that the health care providers' failure to object to the "adequacy or reasonableness of the notice of claim" waived any such objection because of the express provisions of Rule Two (b) requiring "[a]ny objection to the adequacy or reasonableness of the notice of claim" to be made in thirty days. The difficulty with this argument is that *no notice at all* was given that claims were being made against other health care providers. If the claimant had indicated in the notice that claims would be made against those other health care providers but did not indicate in the notice that they were also being notified, perhaps this waiver Rule might have been applicable, but a failure to give any information at all as to claims being made against other health care providers affords no opportunity to question the "adequacy or reason-

ableness" of the notice. Therefore, the Court does not find that these health care providers have waived their objection to the lack of notice.

III. *These claims do not arise out of the same "incident" and therefore the Rule is inapplicable.*

The plaintiff argues that the negligence of all three doctors was "serial" and therefore was not "a claim arising out of the same incident. . . asserted against more than one health care provider" as set forth in this Rule. This line of argument assumes that each doctor's negligence is a separate "incident." There are two fallacies in this reasoning:

(1) "Incident" as a noun is defined in *Webster's New International Dictionary* (2d ed.) as "that which happens or takes place; an event; occurrence." "Negligence" as a noun is defined in the same work as "quality or state of being negligent."

(2) There must be a combination of negligence *and injury* to give rise to a cause of action. *Locke v. Johns-Manville Corp.*, 221 Va. 951, 957 (1981). Obviously, the Chief Justice is referring to an injury resulting from negligence in his choice of the word "incident." I cannot believe he would write a rule that would deal with a claim of negligence not involving an injury or cause of action not justiciable in our courts.

If the claimant had separated the various complaints against these doctors into separate injuries and therefore separate claims, or separate causes of action or separate incidents, she *might* have been entitled to give separate notices, depending on whether the injuries were severable and the subject of separate recoveries. However, she has treated them as "one incident" in her various notice of claims, quoted in part as follows:

> Dr. Quade (February 16, 1984) - "[Your] failure to treat the proteus morabelis [I infer a bacteriological infection destroying bone tissue] upon discovery [during an operation on March 9, 1982] was a failure in the treatment of Mrs. Harter which was negligent and ultimately resulted in her paralysis."

Dr. Daugherty (February 16, 1984) - "[Your] failure to do a thorough evaluation on March 25, 1982 [when seeing the patient after a fall] and the failure to provide her with some sort of spinal protection at that time was negligent and ultimately caused or contributed to her ultimate paralysis."

Dr. McAllister (February 17, 1984) - "[Your] failure to perform the correct surgical procedure [misdiagnosis of spinal condition on initial operation on March 29, 1982 and contraindicated surgery of the spine on April 3, 1982 and failure] to provide adequate protection for Mrs. Harter's spine following surgery was negligent and . . . that negligence caused or contributed to her ultimate paralysis."

Winchester Surgical Clinic, Ltd. (March 7, 1984) - "[Dr. Quade's] failure to treat the proteus morabilis upon discovery was a was a failure in the treatment of Mrs. Harter which was negligent and ultimately resulted in her paralysis." "[Dr. Daugherty's] failure to do a thorough evaluation on March 25, 1982, and the failure to provide her with some sort of spinal protection at that time was negligent and that negligence caused or contributed to her ultimate paralysis."

Winchester Neurological Consultants (March 7, 1984) - "[Dr. McAllister's] failure to perform the correct surgical procedure. . . and to provide adequate protection for Mrs. Harter's spine following surgery was negligent and . . . that negligence caused or contributed to her paralysis."

Thus the incident is the "ultimate paralysis" and the claims the various acts each doctor did contributing to the final result.

IV. *Rule Two (e) only applies if one party requests a panel.*

The attempt to "harmonize" this Rule with the statute by construing it to apply only if one party subsequently requests a panel is discordant with the plain language of the Rule. If that had been intended by the rule-maker, he would have expressly said so. It would be similar if the Chief Justice intended to permit a defendant to destroy the validity of a notice such as this by enacting Rule Two (e) simply by requesting a panel, but if no request had been made, Rule Two (e) would be inapplicable. Common sense and the plain language of the Rule preclude any such construction.

Moreover, under this argument, the health care providers could be required to decide the panel issue without knowing whether others were involved. I agree with the health care providers that it is important to know whether other health care providers are involved before deciding upon a panel.

I believe the Rule was plainly written to give all health care providers the complete notice they should have had to make an informed choice as to whether they want a panel, and the construction urged would not accomplish that.

V. *The Rule requirement is a formality in this case.*

The plaintiff's claim all these defendants must have known all about the claims anyhow and the notice was a mere formality. These defendants may have known of the other defendants' treatment, but there is no reason to suppose they would have known that formal notices of claim had been filed or the various theories of liability asserted.

Additionally, there are many instances where notice requirements have been asserted as a bar to an action even though no prejudice was shown, e.g., *Mears v. Mears,* 206 Va. 444 (1965); *Avery v. County School Board,* 192 Va. 329 (1951).

18

**VI.** *The variance from the requirement of Rule Two (e) is harmless.*

This "variation" upon the theme expressed in paragraphs IV and V has been covered in those paragraphs of this letter.