# CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia,
State Lottery Department, et al.

v.

Settlement Funding, L.L.C., et al.

February 10, 2006

Case No. CH-2003-183848

BY JUDGE M. LANGHORNE KEITH

Settlement Funding, L.L.C.'s ("Settlement Funding") cross-bill against Carla von Neumann-Lillie ("Lillie") was heard on January 23, 2006. After hearing the evidence and argument of counsel, I took the case under advisement. I have now had an opportunity to review the evidence, the law, and argument of counsel. For the reasons set forth below, I find that the loan was usurious and violated the disclosure requirement of the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*.

## I. *Background*

On November 12, 1996, Lillie redeemed a winning instant "Money for Life" lottery ticket from the Virginia Lottery. The winning prize was $1,000.00 a month for the duration of Lillie's life. In 1998, needing funds to pay medical bills, Lillie spoke with a factoring firm about selling her Virginia Lottery annuity. That firm told her that the payments she received were not assignable and the firm could not do business with Lillie. Thereafter, Lillie received a series of unsolicited postcards from Settlement Funding, L.L.C., d/b/a Peachtree Settlement Funding, touting its ability to turn her lottery

income into cash. At some point, Lillie and Settlement Funding exchanged phone calls and agreed to a loan to be paid by a partial ("Loan"). Neither the loan agreement nor the promissory note signed by Lillie set forth the interest rate for the Loan. In fact, the effective annual rate on the money borrowed was 22.531%. See Petitioner's Exhibit 4, Settlement Funding's calculation of the effective annual rate. This calculation no doubt understates the actual effective annual rate as, under TILA, the charges to Lillie for insurance should have been treated as finance charges. 15 U.S.C. §1605(b). Through various subterfuges, primarily having Lillie inform the Virginia Lottery that her address had changed from Manassas to Settlement Funding's address in Atlanta, Georgia, Lillie's lottery income was assigned to Settlement Funding. WebBank, in consideration of $20,837.50 from Settlement Funding, assigned its interest in the Loan to Settlement Funding in May of 1999. The Loan was not fully funded until June of 1999.

In August of 2000, Lillie inquired as to the amount required to prepay the Loan. Settlement Funding answered that it would take $67,023.00. In August of 2001, Settlement Funding notified the Virginia Lottery that Lillie had defaulted on the Loan and had assigned her Money for Life proceeds to Settlement Funding. The Virginia Lottery filed an interpleader in the Circuit Court for the City of Richmond on September 14, 2001. Settlement Funding answered and filed a cross-bill seeking an order that the lottery proceeds should be directed to Settlement Funding. Lillie answered the cross-bill and raised certain affirmative defenses, among them usury and violations of TILA. Settlement Funding denied the affirmative defenses but did not assert any other defense such as the statute of limitations. The Richmond Circuit Court granted the interpleader and lottery funds were paid thereafter into the registry of the Court. Venue was transferred to this Court in May of 2003.

On November 7, 2005, Judge Jane Marum Roush sustained Lillie's demurrer to the cross-bill holding that, at the time of the assignment, lottery proceeds could not be assigned as a matter of law.[1] The funds in the registry of the Court were released to Lillie. Judge Roush gave Settlement Funding until November 20, 2005, to file an amended cross-bill seeking a money judgment against Lillie. Settlement Funding filed its amended cross-bill on December 19, 2005, seeking a judgment against Lillie for the Loan principal balance of $27,296.29 plus accrued interest and penalties of $208,438.60. At trial, without objection, Lillie raised the two affirmative defenses asserted in response to Settlement Funding's original cross-bill, i.e., usury and a violation

---

[1] This is reported at 69 Va. Cir. 265. [Reporter's Note]

of TILA. Lillie also raised the defense of unclean hands, see Part IV of this letter opinion.

## II. *The Usury Defense*

Under Virginia law, a loan with an interest rate in excess of twelve percent is usurious. Va. Code Ann. § 6.1-330.55 (Michie 2002). Settlement Funding argues that the Court should reject Lillie's usury defense for several reasons. First, Settlement Funding asserts that the loan agreement made the Lillie loan subject to Utah law and Utah has no usury law. However, there was no proper proof produced at trial in respect to Utah law. There is a "presumption in the absence of contrary evidence that the foreign law under which either party claims is identical to the *lex fori.*" *Norfolk & W. Ry. v. Denny*, 106 Va. 383, 400, 56 S.E. 321 (1907) (Keith, P.). Thus, the Court must presume that Utah law is identical to Virginia law and, absent any Virginia exception, the Lillie Loan is usurious.

Second, Settlement Funding argues that it does enjoy such an exception because its assignor, WebBank, is a Utah industrial bank and such organizations are not subject to usury defenses under § 6.1-330.60 of the Virginia Code. This argument also founders on the absence of any proper proof. Neither the loan agreement nor note introduced into evidence recites the organizational status of the Lender. There is a reference to an attached "term sheet" in the loan agreement, but the term sheet itself was not introduced. Because at trial Settlement Funding failed to introduce any evidence as to how WebBank Corporation is organized, the Court cannot assume that it is in fact an industrial bank or even a corporation.[2] Lillie's testimony that the Loan was for a personal purpose is entirely believable. Therefore, Settlement Funding is subject to Lillie's defense of usury.

Under Virginia law, Settlement Funding can only collect for the principal sum of the Lillie Loan. Va. Code Ann. § 6.1-330.56 (Michie 1987). Any payments made by Lillie must be deducted from the principal. *Turner v. Turner*, 80 Va. 379 (1885). The parties agreed that Lillie had made 27

---

[2] In its unsolicited post trial memorandum of law Settlement Funding asserts that Lillie "ratified the subject contract, including its recital of WebBank's status as a Utah-based banking institution and the bank's choice of Utah law as governing the agreement, by virtue of her execution of the subject Loan Agreement, *supra.*" No such recital can be found in the Loan Agreement introduced into evidence.

payments of $500.00 each. Settlement Funding is therefore entitled to judgment against Lillie in the amount of $15,500.00.

## III. *The TILA Defense*

Loans over $25,000.00 are not subject to TILA. 15 U.S.C. § 1603(c). Under TILA, a creditor must provide certain disclosures to a borrower. These disclosures are required with regard to the finance charges of a loan. There was no evidence that TILA's required disclosures were given to Lillie. Finance charges and the amount financed are different categories and are mutually exclusive. *See* 12 C.F.R. ("Reg. Z") § 226.18(b), (d). Life insurance premiums are classified as finance charges unless certain exceptions are met. 15 U.S.C. § 1605(b). If a creditor fails to make TILA's required disclosures to an individual borrower, the borrower may recover actual damages or twice the amount of any finance charge in connection with the transaction and attorney's fees. 15 U.S.C. § 1640.

The premium for the life insurance was $4,205.10 and, therefore, the amount financed was under $25,000.00. Thus, TILA applies. The exceptions to § 1605(b) were not met as Lillie was required to pay for the insurance and there was no evidence that any of the statutory disclosures to or from Lillie concerning the life insurance were obtained. There was no evidence of Lillie's actual damages resulting from the disclosure failure. She is limited then to the statutory damages of twice the amount of the finance charge. Lillie's claim under TILA was raised as a defense not as an affirmative claim. Therefore, her defense is limited to recoupment pursuant to § 1640(e) of TILA. As her statutory damages equal approximately $128,000.00,[3] this more than offsets the amount set forth above that Settlement Funding is entitled to receive from Lillie.

## IV. *The Unclean Hands Defense*

Lillie also raised the defense of unclean hands. Equitable defenses can be raised in any action on a contract. Va. Code Ann. § 8.01-422 (Michie 1977). The unclean hands doctrine prevents a litigant from prevailing if the litigant seeks equitable relief and has "unclean hands." *Richards v. Musselman*, 221 Va. 181, 187, 267 S.E.2d 164 (1980). Here, Settlement

---

[3] Settlement Funding's exhibit lists $60,000.00 in interest. There is also the $4,205.10 finance charge for life insurance.

Funding in its Amended Cross-Bill seeks a money judgment, not equitable relief. Thus, while Settlement Funding is certainly guilty of unclean hands (it did not disclose finance charges, prepared a false insurance application, and required Lillie to submit false change of address forms, among other sharp practices), such transgressions do not prevent it from suing for a breach of the Loan.

For the reasons stated in Parts II and III above, Settlement Funding cannot recover from Lillie.

The parties are directed to schedule a hearing on the issue of attorney's fees.