WALKER v. WALKER'S EXECUTOR.

1. A covenant by a husband for the maintenance of the wife, contained in a deed of separation between them, through the medium of trustees, where the consideration is apparent, must now be regarded on authority as valid, notwithstanding the serious objections to such deeds.　It will accordingly be enforced in equity, if it appear that the deed was not made in contemplation of a future possible separation, but in respect to one which was to occur immediately, or for the continuance of one that had already taken place.　And this especially if the separation was occasioned by the misconduct of the husband, and the provision for the wife's support was reasonable under the circumstances, and no more

---

† § 515 a.　　‡ Ib. 432.　　§ Thorne v. Watkins, 2 Vesey, Sr., 35.

than a court before which she was entitled to carry her grievances would have decreed to her as alimony.

2. The validity of such a covenant is not impaired by the fact that the deed contains a provision that if the parties should afterwards come together, the trust should remain and be executed in like manner, as if they should remain separate.

3. A husband may be chargeable as trustee with the income of his wife's separate property, and if he have received it from her to invest it for her, and have not invested it, he will be so charged at her suit, whether the income be of property which he has settled upon her, or be income from some other separate property of hers.

4. The Federal courts where they have jurisdiction will enforce, for the furtherance of justice, the same rules in the adjustment of claims against ancillary executors, that the local courts would do in favor of their own citizens.

5. A widow, by being a mere formal party to a deed of compromise between the heirs-at-law of a decedent and his residuary devisees, by which a specific sum is given to the former and the residue of the estate to the latter, does not estop herself from coming upon the estate with a claim for separate moneys of hers, received by her husband to invest for her, but which he did not so invest; she having done nothing to conceal her claim from the residuary devisees, and the "residue" which the heirs surrendered having been a residue after the proper settlement of the estate.

6. Nor does she estop herself from asserting such a claim against her husband's executors, by her acceptance of a provision under his will which makes a limited provision for her, to be received, with income under a certain trust deed, in satisfaction of dower.

7. The view of the court below upon an ancient item of account, somewhat obscure, and where there was but little evidence, not disturbed.

8. The estate of a husband, who had maltreated his wife, and obtained from her the income of her separate property under a promise to invest it for her, but who did not so invest it, charged after his death with interest, compounded annually, through a long term of years, and deprived of all commissions for services as trustee.

APPEAL from the Circuit Court for the District of Massachusetts; the case was this:

In September, 1845, Dr. William Walker, then a citizen of Charlestown, Massachusetts, without cause, compelled his wife and two of their children to leave his house. Before this time he had treated his wife with great harshness and cruelty, proceeding so far as to inflict personal violence on her. This conduct entitled his wife, by the laws of Massachusetts, to a decree of divorce from bed and board, and for

a proper allowance of alimony ; and, with a view to obtain these, she applied to counsel to take legal proceedings against her husband.   On learning this Dr. Walker sought the advice of his friend, Uriel Crocker, and requested him to confer with a lawyer on the subject.   This friendly service was performed by Mr. Crocker, and the conference resulted in recommending the husband to settle on his wife $50,000, and that articles of separation between them be executed.   It was considered that the sum agreed on was a suitable settlement under the circumstances, as nearly the same amount had been obtained by Dr. Walker from the estate of his wife's father, and as Dr. Walker was, independently of this, a person of fortune; his estate at the time having been between three and four hundred thousand dollars.

The parties adopted the recommendation of Mr. Crocker and his conferee, and on that basis the articles of separation were drawn and executed.   By these articles Dr. Walker transferred to trustees, in trust for his wife, the amount of property agreed upon, and directed the income to be paid to her during her life.   This transfer was, however, on the express condition that Mrs. Walker should release her possibility of dower, when asked to do so, to all the real estate which he should sell during his lifetime, and if she survived him, that she should release her right of dower to his entire estate.   The trustees on their part covenanted to indemnify the husband from all payment of alimony thereafter, and the deed contained a stipulation that if the parties should afterwards come together the trust should remain, and be executed in like manner, as if they should live separate.

The parties continued to live apart, after the execution of these articles, until the month of April, 1846, when Mrs. Walker returned to her husband at his request, and again for a certain time lived with him.

The main controversy in this case grew out of transactions which occurred after Mrs. Walker thus returned to her husband's house.

The money was admitted to have been always paid by the trustees into Mrs. Walker's own hands.   And that in

September, 1846, when the first payment after her return to her husband's house was due under the deed of trust, Dr. Walker went to Mr. Crocker, the managing trustee, with an order for the money from his wife, and stated that she had agreed that he should invest the amount for her, with the sum of one thousand dollars previously paid to her at Crocker's request.

As to the rest of this part of the case—assuming that the testimony of a daughter, Miss Emily Walker (by whose testimony the facts in regard to it were in a considerable degree sought to be established), could be relied on—the facts were these:

On the occasion of a second payment, which was made to the wife in person, as were the rest, Miss Walker testified that her father wished her mother to give him the money unconditionally, saying that she had no need of it, now that she was in the house with him, and that all her wants were supplied; but the request was declined. The subject was discussed between the parties for several days, and finally Mrs. Walker surrendered the checks for the money, on the promise of her husband to invest them for her at the time he received them. The same discussion ensued when the next payment was made, and the same struggle occurred on the part of the husband to get the money from the wife without any promise, and with the same result—on agreement by him to invest it for her. The discussion and struggle were renewed on the occasion of the receipt by the wife of the third payment, and was ended by the husband promising the wife to invest the check then on hand, and all future checks which he should receive from her, for her benefit. After this there was quiet in the family, and Mrs. Walker, relying on her husband's promise, paid to him, while she remained in his house, the successive checks as they were received from the trustee. In 1855, Dr. Walker was taken ill. His daughter, already named, testified as to what took place during this illness as follows:

"He said that he was very ill; that he could not live many

weeks, perhaps not many days; that there were some things which he had neglected to attend to; that this neglect troubled him a great deal. He had neglected, he said, to invest the money which he had received from my mother, which she had received from the trustee, Mr. Crocker; that he had intended to invest it; that the difficulty with him had been to find a safe investment; that it was her money, and all she had; that it would not do to risk anything with it. This he said to me, not once but many times."

The witness was sharply cross-examined, and otherwise attempted to be discredited; but nothing was said by her, or shown by others, to bring into doubt her original statement.

At another time—having previously requested Crocker to defer the payment of a sum of money then due to his wife, on account of his apprehension that she would be unwilling to have it invested for her, as he wished to do—he desired Crocker to go to his house and pay his wife the money, as he had a good chance to invest it. In fact the whole evidence made it clear that Dr. Walker received the income of his wife's estate from her hands on the condition that he would invest it, as received, for her benefit, and that he agreed to this condition.

Mrs. Walker lived with her husband until June, 1860, when she again abandoned his house on account of his cruel treatment of herself and their daughters, and remained away from him during the residue of his life.

After the separation in June, 1860, Dr. Walker went to reside in *Newport, R. I., and died there* in 1865, leaving more than a million of dollars of estate, and a will, which, after setting aside $180,000 in trust, to secure from the income to his wife, with the rents of the $50,000, settled in 1846, an annual income of $3000; and to his children the remaining income; and after various legacies, including that of most of his silver plate between his wife and daughters, left the residue of his estate to literary and scientific institutions. The provision made by his will for his wife was declared by the will to be "in full and in lieu of her dower."

Letters testamentary were granted on Dr. Walker's estate in Rhode Island; but letters ancillary were also granted in Massachusetts, where he had a large amount of personal property as well as in Rhode Island.

The granting of letters testamentary upon Dr. Walker's estate was opposed by his heirs-at-law, and after the grant of the letters, they threatening to seek to have them vacated, a compromise was effected, and a deed executed accordingly, between the heirs and the residuary devisees, by which the former released to the latter, after the payment to themselves of a considerable sum of money, the residue of the estate, after payment of all debts and just claims upon it. Mrs. Walker was a formal party to this deed

Mrs. Walker now, October Term, 1865, filed a bill against her husband's executors, alleging a trust or investment as respected the moneys which she had paid into his hands, and calling for an account.

The executors, either by the answer or in the argument, set up as defences to the bill,

1. That the original article of separation, having been a *voluntary agreement* of husband and wife to live separately, was invalid; and the trust created by it of course invalid also; that this especially was so as the instrument was construed by the other side, for that this construction made it his interest to oppose his wife's return to his house, since he would have then both to support her and to let her have the separate income also.

2. That as to the sums received from his wife, equity would not make Dr. Walker a trustee for her; that if he could properly be a trustee at any time, yet that during the cohabitation of the parties the trust was suspended; moreover that the evidence was insufficient to show any intention to make himself such trustee in fact; the bill not being filed until twenty years after the alleged promises were made, and the evidence to support it being chiefly that of the daughter, a witness naturally inclined to the mother's side, and whose statements were largely colored by her opinions and feelings.

3. That Dr. Walker having died in Rhode Island, and his will having been proved there, this suit should have been brought there and not in Massachusetts, where it was brought.

4. That Mrs. Walker, having been a party to the deed of compromise, was estopped from bringing this suit.

5. That by accepting the provisions of her husband's will she had waived all right to maintain a suit like the present one.

The court below sustained the bill; held Dr. Walker a trustee to invest for his wife the income of the settled property received by him from her; and referred the case to a master for an account.  The master charged Dr. Walker's estate accordingly, charging him also interest compounded annually, but allowed him commissions as trustee, $1682.38. He also allowed his estate a credit of $2400, which was claimed by it in virtue of a receipt of his wife's, thus:

"Out of the sum of 2087 dollars and 97 cents, which I have received of the trustees, as specified in their two first accounts, I have refunded to my husband $1500, fifteen hundred dollars, being part payment of 24 hundred dollars, which he gave, at my request and on my account, in equal proportion to my two sons; and I agree that the like sum of 12 hundred dollars shall be given successively to my other children, Frances, Kate, and Abby, in such manner as may be agreed upon between me and my husband, as far as the income or the trust property will allow, reserving to myself the right to use as much of said income as I may need for private expenses and any charitable objects I may wish to favor.

"ELIZA WALKER.

"BOSTON, March 27, 1847."

The Circuit Court affirmed this report, giving Mrs. Walker a decree for $81,750.85; and Mrs. Walker appealed, asserting among other things that not only was Dr. Walker entitled to no commissions as trustee, but that his conduct was such as deserved severe treatment, and that interest ought to have been compounded semi-annually.

The case was elaborately and ably argued by *Messrs. Sidney Bartlett and B. R. Curtis, for the appellant; and by Messrs. Thomas and Hutchins, contra;* the additional point being made in this court in behalf of Dr. Walker's estate, that under the General Laws of Massachusetts, ch. 97, section 16, the executors were not liable to this suit, because it was begun within one year after they gave bonds.

Mr. Justice DAVIS delivered the opinion of the court.

The bill here seeks to charge the estate of Dr. Walker, in the hands of his executors, with a trust in favor of his widow. The court below found that the trust existed and was valid, and this appeal seeks to review that decision as erroneous.

Two principal questions are presented for consideration:

1st. Is the trust created by the articles of separation in this case valid, and will a court of equity enforce it?

2d. Can a husband be a trustee for his wife; and if so, did Dr. Walker constitute himself such a trustee or not?

It is contended that deeds of separation between husband and wife cannot be upheld, because it is against public policy to allow parties sustaining that relation to vary their duties and responsibilities by entering into an agreement which contemplates a partial dissolution of the marriage contract. If the question were before us, unaffected by decision, it would present difficulties, for it cannot be doubted that there are serious objections to voluntary separations between married persons. But contracts of this nature for the separate maintenance of the wife, through the intervention of a trustee, have received the sanction of the courts in England and in this country for so long a period of time that the law on the subject must be considered as settled.*

---

* Compton *v.* Collinson, 2 Brown's Chancery, 377; Worrall *v.* Jacob, 3 Merivale, 266; Jee *v.* Thurlow, 2 Barnewall & Creswell, 546; Webster *v.* Webster, 1 Smale & Gif. 489; S. C. 23 English Law and Equity, 216; 17 Id. 278; Randle *v.* Gould, 8 Ellis & Blackburne, 457; Carson *v.* Murray, 3 Paige, 483; Nichols *v.* Palmer, 5 Day, 47; Hutton *v.* Duey, 3 Barr, 100; Bettle *v.* Wilson, 14 Ohio, 257; Chapman *v.* Gray, 8 Georgia, 341; Reed *v.*

It is true that different judges, in discussing the question, have struggled against maintaining the principle; but while doing so they have not felt themselves at liberty to disregard it, on account of the great weight of authority with which it was supported, and have, therefore, uniformly adhered to it. It is unnecessary to consider whether the extent to which the doctrine has been carried meets our approbation, nor are we required to discuss the subject in any aspect which this case does not present. It is enough for the purposes of this suit to say that a covenant by the husband for the maintenance of the wife, contained in a deed of separation between them, through the medium of trustees, where the consideration is apparent, is valid, and will be enforced in equity, if it appears that the deed was not made in contemplation of a future possible separation, but in respect to one which was to occur immediately, or for the continuance of one that had already taken place. And this is especially true if the separation was occasioned by the misconduct of the husband, and the provision for the wife's support was reasonable under the circumstances, and no more than a court, before which she was entitled to carry her grievances, would have decreed to her as alimony. In this state of the law on the subject, it is clear the deed of settlement in controversy was unobjectionable. It is equally clear that the separation accomplished by it was the best thing for the parties at the time, and that it ultimately led to a reunion which lasted over fourteen years. The evidence shows that the bad conduct of Dr. Walker to his wife justified her in leaving him, and entitled her to a legal separation at the hands of a court, with alimony in proportion to the value of his estate. For many reasons, which are apparent without stating them, it was desirable, if possible, to avoid a judicial investigation, and accordingly negotiations to this end were commenced on the part of the husband, which resulted in

Beazley, 1 Blackford, 97; Wells v. Stout, 9 California, 494; Dellinger's Appeal, 35 Pennsylvania, 357; Gaines v. Poor, 3 Metcalf (Ky.) 503; Hunt v Hunt, judgment by Lord Westbury in 5 Law Times Rep. 778.

securing to the wife a suitable provision for her support. This settlement was made by him, and accepted by her, not only in lieu of alimony, which she could have obtained, but also in place of dower; and the covenant of the trustees against any future claim of alimony, and their agreement that the wife's debts should be paid out of the property conveyed to them, furnished the security to the husband for the permanent arrangement contemplated by the parties. If we consider that the value of the property transferred to the trustees for the benefit of the wife was but little more than the husband received in her right from her father's estate, and that, at the time, he was worth between three and four hundred thousand dollars, it would seem the provision for the wife's maintenance was less than she had a right to demand and ought to have received. If the law authorizes a wife to leave her husband on account of cruel treatment, and to get from him a competent support, it cannot withhold its sanction to the articles of separation concluded between these parties under the circumstances disclosed by the evidence in this case. It is insisted the obligation of the trust was discharged when the wife returned to her husband's house, but this is a mistaken view of the effect of the instrument. It was the intention of the parties that the arrangement should be permanent, and to accomplish that purpose the agreement was framed so that the wife should enjoy her separate estate during life, although she should subsequently become reconciled to her husband, and cohabit with him. We can see no valid objection to such a provision, and it is certainly supported by authority.* The husband had a right to make a settlement upon his wife without any view to separation, and the insertion of this provision shows that he did not intend the settlement to cease on the return of the wife to cohabitation. There is no good reason why effect should not be given to the intention of the parties on the subject. If, on grounds of public policy, it is desirable that

---

* Wilson *v.* Mushett, 3 Barnewall & Adolphus, 743; Bell on Husband and Wife, 525–541.

the parties should be reconciled, whatever tends to promote such a result will receive the favorable consideration of a court of equity. Without this provision there was no inducement for Mrs. Walker to return to her husband; with it she could try to live with him again, and if his previous bad treatment was repeated she was fortified against the contingency of being turned away another time penniless. There was nothing in his previous conduct to inspire her with confidence in his subsequent good behavior, and but for the fact that the means of support were secured to her in case her life became intolerable with him, it is reasonable to infer that she would never have ventured to cohabit with him after the separation. It is clear, then, that this trust was operative during the life of the wife, and that a court of equity will enforce it.

The next inquiry relates to transactions which occurred after the wife returned to her husband at his request, and on which the claim for relief in this case is based. That a husband may be a trustee for his wife, and can be compelled in equity to account for any money or property belonging to her which he has received, in the same manner that a stranger would be held to account, is a doctrine so well settled that it hardly requires a citation of authorities to sustain it.*

It makes no difference whether the property which he has received was settled by him upon his wife, or came to her through other sources. If the property was her own separate and exclusive estate and he has agreed to become her trustee respecting it, his liability attaches, and he will be charged with the trust. The property settled upon Mrs. Walker by the articles of separation was her separate estate, and to be enjoyed by her in the same manner as if it had been conveyed to trustees for her benefit, by settlement before marriage. The income secured to her was not suspended by her returning to live with her husband, on his

---

* 2 Kent, 163, and cases cited; 2 Story's Equity, § 1380; Neves *v.* Scott, 9 Howard, 212; Woodward *v.* Woodward, 8 Law Times Rep., N. S. 749; Grant *v.* Grant, 12 Id. 721.

solicitation, nor had he any right to retain it by way of set-off against the expense of her living. If for any cause he desired the state of separation to cease, and invited his wife to return, it was his duty, as it should have been his pleasure, out of his abundant means, to have given her a decent support. What is the evidence touching the question whether Dr. Walker constituted himself the trustee for his wife in respect to the income derived from her separate estate?

It is clear and uncontradicted, that Dr. Walker received the rents and incomes of his wife's estate, *from her*, on the condition to which he agreed, that he would invest them for her benefit as they were received, and this agreement imposed on him the character of a trustee as to this property. To hold otherwise would be to sanction the grossest fraud. It is not necessary to create the trust that the husband should use any particular form of words, nor need those words be in writing. All that is required is that language should have been employed equivalent to a declaration of trust. That the words which Dr. Walker used constituted him the trustee of his wife, cannot admit of controversy. An attempt is made to discredit the principal witness, by whom the important facts in this case are proved, but it has wholly failed. Her narrative of the occurrences which led to the separation, and of the transactions out of which the trust arises, is intelligently given, does not vary on cross-examination, and bears the impress of truth.

It is insisted that this suit should have been brought in Rhode Island, because Dr. Walker had his domicile in that State when he died, and his will is proved there. But the will was also proved in Massachusetts, where ancillary administration was obtained; and if, as is conceded in such a case, the assets received and inventoried by the executors there are liable to the claims of the citizens of Massachusetts, the citizens of other States will be placed on the same footing in this respect, in the Federal courts sitting in Massachusetts, where there is no suggestion of insolvency. The Circuit Courts of the United States, with full equity powers, have jurisdiction over executors and administrators, where

the parties are citizens of different States, and will enforce the same rules in the adjustment of claims against them that the local courts administer in favor of their own citizens.*

It is urged that Mrs. Walker is estopped from setting up this claim because she was a party to the indenture of compromise. But if so, she was only a formal party to it, re ceived nothing under it, and was not concerned with the residue of the estate, which it proposed to adjust only after the debts, legacies, and liabilities were paid. Having done nothing to conceal her claim, nor imposed upon the parties to the compromise respecting it, she cannot be considered as having waived her right to prosecute it.

But if this defence is overruled, it is nevertheless contended that Mrs. Walker, by accepting the provisions of her husband's will, waived her right to institute this suit; but this is giving an effect to the acceptance not warranted by the terms of the will, or anything connected with the case. Dr. Walker in his will saw fit to make a limited provision for his wife, and to declare that it was to be received, w'th the income under the trust deed, in full satisfaction of dower in his estate. Nothing is said about the other trust under which he received the separate property of his wife to be invested, and it is hard to see how his estate can be released from accounting for it, or the status of the complainant affected, because she consents to take under the will what is given her in satisfaction of dower.

It is objected that the executors are not liable to this suit because it was commenced within one year after they gave bonds for the discharge of their trust.† But this defence is not now open to the respondents. To have availed themselves of it, it was necessary that it should have been presented at the earliest stage of the proceedings. In not doing so, they will be considered as having waived their right to insist that the suit was brought too soon.

* Green's Admr. *v.* Creighton, 23 Howard, 90; Harvey *v.* Richards, 1 Mason, 381.

† See Gen Statutes of Mass., c. xcvii, § 16.

The remaining questions in this case relate to the exceptions of the parties to the master's report. In dealing with these exceptions, it seems to us that all we are required to notice are embraced in three different points of inquiry:

1st. Did the master err in allowing Dr. Walker $2400, as a deduction from the income of the trust property?

2d. Should the interest charged against the trustee be compounded annually, or semi-annually?

3d. Was the trustee entitled to any compensation for his services?

The solution of the first inquiry depends on the effect to be given to the receipt or memorandum signed by the complainant, dated March 27th, 1847. The complainant insists in the adjustment of the account the master mistook the effect of the instrument, and that he should have allowed as a credit against her $1500, instead of $2400. It is not easy, after this lapse of time, to tell the exact basis on which the accounts should be settled with reference to this receipt. It was a memorandum made when the parties were living in harmony, and after Dr. Walker had undertaken to invest for his wife the first check delivered to him by her, and after her purpose was manifest that the entire income of her estate should be invested to provide against the contingencies of the future. And yet this memorandum shows that she so far modified this purpose as to authorize her husband to give for her $1200 to each of her two sons, and expressed the intention of making an equal donation to her other children. The matter was probably adjusted between the parties, and, although there is no proof on the subject, the Circuit Court, doubtless, in approving this part of the master's report, acted on the idea that by long acquiescence it should be treated as having been settled. We cannot say that this view of the subject is wrong, and the exception is, therefore, overruled.

2d. The next exception relates to the manner of computing interest. That Dr. Walker acted in utter disregard of his trust, is too plain for controversy. He treated the money as his own; neither kept nor rendered any account of his

trust; and his conduct throughout is irreconcilable with the intention to perform his agreement. There is not a shadow of excuse for his neglect. The reason assigned for it to his daughter, when on his sick-bed, that he had not been able to find safe investments for the money, was the merest pretence. It could not be otherwise, as he was an intelligent man, of large wealth, and well informed on the subject of investing moneys. The condition of his estate shows that he had abundant opportunities for profitable investment on his own account; and if so, how can it truthfully be said he could not find safe investments for the small sums in his hands belonging to his wife? A court of equity, the especial guardian of trusts, will not tolerate excuses of this sort on the part of a trustee, for omitting to discharge his duty to his *cestui que trust.* There is, therefore, no hesitation in the court to allow, in the adjustment of the trustee's account, the interest to be compounded annually. It has been argued with earnestness that this is a case for severe treatment, and that the master should have allowed semi-annual rests; but we are not at liberty to discuss the subject, as the court are equally divided in opinion upon the question which it presents.

3d. The master was wrong in allowing any compensation to the trustee for his services, and the exception taken to that part of his report is, therefore, sustained. To hold that, in a case like this, the trustee should be allowed compensation, when he literally did nothing towards executing his trust, but on the contrary was guilty of the grossest abuses concerning it, would be a departure from correct principle. The sustaining this exception renders a modification of the decree in the Circuit Court necessary. That court passed a decree in favor of the complainant for $81,750.85. It should have been increased by the addition of $1682.38, which sum was deducted, in the account stated, for the trustee's services. The decree of the Circuit Court is, therefore, modified, on the basis that the complainant, at the time it was rendered, was entitled to recover from the respondents the sum of $83,433.23.

Interest will follow from the date of the decree, at the rate allowed on judgments and decrees in Massachusetts.