# Richmond.

## Moreland v. Moreland.

### March 12, 1908.

1. CONFLICT OF LAWS—*Contract Made in Another State—Presumption.*— In construing a contract made in another State if there is no proof as to what the law of the other State is, it will be presumed to be the same as the law of this State.

2. HUSBAND AND WIFE—*Deed of Separation—Trustee for Wife—Wife's Power to Contract.*—Where husband and wife who have already separated enter into a contract adjusting property rights and providing a maintenance for the wife, it is not now essential to the validity of the contract that the provision for the wife be made through the intervention of a trustee. A married woman in this State may contract and be contracted with, and sue and be sued, as if she were unmarried.

3. HUSBAND AND WIFE—*Deed of Separation—Validity—Severable Provisions—Case at Bar.*—It would seem, upon authority, that a deed of separation between husband and wife who have already separated is not contrary to public policy and is enforceable, but even if the provision to live separate and apart were contrary to public policy and not enforceable, that fact does not destroy the other provisions of the contract in controversy in this suit adjusting property rights and providing a maintenance for the wife. Though the former be rejected, the latter, which in this case are clearly separable, remain valid and enforceable.

4. HUSBAND AND WIFE—*Deed of Separation—Anticipatory Breach—Case at Bar.*—Conceding that the doctrine of "anticipatory breach" applies to a contract of separation between husband and wife, the husband, in this case, has failed to show that he is entitled to invoke its protection. Whether or not the conduct of the wife was such as to justify the husband in treating the contract as terminated was a question for the jury, whose finding that it was not is supported by the evidence.

5. PLEADING—*Affidavit With Plea of Non Assumpsit—Oral Plea.*—If a defendant files an affidavit along with a plea of *non assumpsit* to an action of *assumpsit* upon a contract for the payment of money

where the. plaintiff has filed with his declaration an affidavit as to
the amount and justice of his claim, the plea need not be in writing.
The affidavit is necessarily in writing, and is to be filed with the
plea, but the statute does not require the plea to be in writing, and
such is not the practice.

6. APPEAL AND ERROR—*Amending and Affirming Judgment—Remanding
for a New Trial.*—If a trial court erroneously instructs a jury to
deduct a certain amount from the plaintiff's claim, and the jury
does it and renders a verdict for the plaintiff for the residue, this
court cannot amend the judgment of the trial court in that respect,
and, as amended, affirm it, but at most can only reverse the judg-
ment and remand the case to the trial court with directions that
unless the defendant will agree to the entry of a judgment in favor
of the plaintiff for the full amount of his claim, the verdict be set
aside and a new trial awarded.

Error to a judgment of the Law and Equity Court of the
city of Richmond in an action of *assumpsit.* Judgment for
the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*S. S. P. Patteson,* for the plaintiff in error.

*A. W. Patterson,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

In Wilmington, N. C., November 10, 1903, where the
parties, husband and wife, were then living, plaintiff in error
(defendant below) and defendant in error (plaintiff below)
entered into a formal written contract, reciting that owing to
unhappy differences and disputes between the parties, they had
agreed to live separate and apart for the rest of their lives; and
the agreement then proceeds to provide for the custody of their
minor child, and to settle between them their property rights,
as follows: By paragraph *Third* the society and custody of said
child, then about three and a half years old, is apportioned be-
tween the two parents, upon a certain basis therein stated. By

paragraph *Fourth* the husband binds himself to pay his wife $66.66 2-3 per month for such time as the child is with her, and $50 per month when the child is with the father. By paragraphs *Fifth* and *Sixth,* provision is made for the transfer of the child from one to the other parent in pursuance of the two preceding sections, and for his custody in event of either parent's death. By paragraph *Seventh* all the wearing apparel, personal ornaments, and all other property of the wife, whether real or personal, either then or thereafter belonging to her, is declared to be hers absolutely, as if she were sole and unmarried, free from any claim on same by the husband, with full power to sell and dispose of such property at her pleasure. Paragraph *Eighth* makes like provision with respect to the husband's possessions, all of which are declared to be his absolutely, free from any and all claim against same by his wife, and with full power to dispose of said property according to his will and pleasure. Paragraphs *Ninth* and *Tenth* provide that upon the death of either party in the lifetime of the other, all property of the one so dying shall pass and belong to such person or persons as would have been entitled thereto had the other party died first. And paragraph *Eleventh* relieves the husband of all debts and liabilities contracted by the wife after the date of said agreement.

The parties had already separated, because, as their agreement recites and the proof shows, it was impossible for them to remain longer together, and the wife had taken refuge in a hotel and telegraphed for her father, with whom she returned to her old home in Kentucky a day or two later.

From the date of the agreement, November 10, 1903, to December 15, 1904, plaintiff in error regularly paid his wife the amounts called for by the agreement, but from and after the last named date, he paid her at the rate of only $25 per month for nine months, $33.33 for one month, and nothing at all for the rest of the time up to the institution of this suit. According to an account kept by defendant in error, there was

a balance due her from plaintiff in error of $679.25 as of May 15, 1906, to recover which this action of *assumpsit* was brought by her; and upon the trial of the cause there was a verdict and judgment in her favor for $409.67 with interest from May 15, 1906, and costs, to which judgment this writ of error was awarded.

There are but two questions raised in the petition for the writ of error—first, whether or not the agreement of separation entered into by the parties on November 10, 1903, was void in its inception because contrary to public policy; and, second, whether if valid in the beginning, it was not made voidable at the election of plaintiff in error, who undertook to repudiate the provisions of the agreement, because of an alleged "antici-patory breach" thereof by defendant in error.

It is argued by counsel for plaintiff in error, that the agreement in question having been entered into in the State of North Carolina, it should be construed according to the laws of that State, which were then considered unfavorable to the contention of defendant in error; but all that need be said in this connection is, that there being nothing in the record to show what is the law of North Carolina touching such contracts, it must be presumed to be the same as the law of Virginia. *App* v. *App,* 106 Va., 253, 55 S. E. 672; *N. & W. Ry. Co.* v *Denny,* 106 Va. 383, 56 S. E. 321.

Whatever difference of opinion there may be in the English authorities dealing with the question, whether or not agreements between husband and wife, to live separate and apart, are void because against public policy, grows out of a recognized distinction contended for between a promise to separate in consideration of a sum of money and an agreement touching the property rights of the parties where the separation had already taken place. The first is uniformly held not to be binding; while the second is, with equal unanimity declared valid and enforceable.

In *Waite* v. *Jones,* 1 Bing. (N. C.) 656, the suit was for money agreed to be paid by the defendant to the plaintiff, in consid-

eration of his executing a deed of separation from his wife; and it was admitted that a promise to separate, in consideration of a sum of money, was not binding, but the agreement in that case was upheld because it might be inferred that the separation had already taken place, and it did not affirmatively appear that the promise induced such action. Upon appeal to the Exchequer Chamber the decision was affirmed, Lord Denman saying: "If I could venture to lay down the principle which alone seems to be safely deducible from all these cases, it is this: 'That when a husband has by his deed acknowledged his wife to have a just cause of separation from him, and has covenanted with her natural friends to allow her a maintenance during separation on being relieved from liability to her debts, he shall not be allowed to. impeach the validity of that covenant.' "

In *Wilson* v. *Wilson*, 1 H. L. Cas. 538, it was held that the separation agreement under review was valid, and specific performance of the covenants of the agreement was decreed. The same doctrine was upheld in *Hunt* v. *Hunt*, 4 DeG. F. & J. 221, where Lord Chancellor Westbury enjoined a suit for restitution which had been begun in the divorce court, contrary to the stipulation of a separation deed, saying that while a voluntary separation was an offense against the ecclesiastical law, it was not one against the common law; therefore, the rights in controversy were only private, and public policy was not involved.

In *Besant* v. *Wood*, L. R., 12 Ch. Div. 605, it was by the master of the rolls said: "For a great number of years both ecclesiastical judges and lay judges thought it was something very horrible, and against public policy, that husband and wife should agree to live separate; and it was supposed that a civilized country would not longer exist if such agreements were enforced by courts of law, whether ecclesiastical or not. But a change came over judicial opinion as to public policy, and other considerations arose, and people began to think that, after all, it might be better and more beneficial for married people to

avoid in many cases the expense and the scandal of suits of divorce by settling their differences quietly by the aid of friends out of court, although the consequence might be that they would live separately; and that was the view carried out by the courts when it became once decided that separation deeds were not *per se* against public policy."

The Supreme Court of the United States, in *Walker* v. *Walker,* 9 Wall. 743, 19 L. ed. 814, a case which cannot be distinguished from the case we have before us, firmly adheres to the doctrine of the English courts, and in an opinion by Mr. Justice Davis it is said: "It is contended that deeds of separation between husband and wife cannot be upheld, because it is against public policy to allow parties sustaining that relation to vary their duties and responsibilities by entering into an agreement which contemplates a partial dissolution of the marriage contract. If the question were before us unaffected by decision, it would present difficulties, for it cannot be doubted that there are serious objections to voluntary separation between married persons. But contracts of this nature for the separate maintenance of the wife, through the intervention of a trustee, have received the sanction of the courts in England and in this country for so long a period of time that the law on the subject must be considered as settled. *Compton* v. *Colinson,* 2 Brown's C. C. 377;   *   *   *   ·

"It is true that different judges, in discussing the question, have struggled against maintaining the principle, but while doing so they have not felt themselves at liberty to disregard it, on account of the great weight of authority with which it was supported, and have, therefore, uniformly adhered to it. It is unnecessary to consider whether the extent to which the doctrine has been carried meets our approbation, nor are we required to discuss the subject in any aspect which this case does not present. It is enough for the purposes of this suit to say, that a covenant by the husband for the maintenance of the wife, contained in a deed of separation between them, through

the medium of trustees, where the consideration is apparent, is valid, and will be enforced in equity, if it appears that the deed was not made in contemplation of a future possible separation, but in respect to one which was to occur immediately, or for the continuance of one that had already taken place. * *

"This settlement was made by him, and accepted by her, not only in lieu of alimony, which she could have obtained, but also in place of dower; and the covenant of the trustees against any future claim of alimony, and their agreement that the wife's debts should be paid out of the property conveyed to them, furnished the security to the husband for the permanent arrangement contemplated by the parties."

The recent case of *Daniels* v. *Benedict*, 97 Fed. 367, 33 C. C. A. 592, was a suit brought by a divorced wife to recover from the devisees of her former husband one-half of the property of which he died seized, according to the statute of distributions in Colorado. To the bill, answer was made setting up, among other defenses, an agreement of separation by which the wife covenanted never to claim any interest in her husband's estate, and the lower court held the defense a good one and dismissed the bill. On appeal to the circuit court of appeals, the decree was by a unanimous court affirmed. The opinion by Sanborn, J., discusses the subject at length, reviewing many of the decided cases, and from the opinion we quote the following: "The contract of separation, therefore, like agreements between strangers, was valid and binding, unless it was illegal, immoral, or violative of public policy. There is certainly nothing illegal in an agreement for a husband and wife to live separate, and to divide their property. There is no moral turpitude in such a contract; nor can it be said at this day to be otherwise than in accord with the public policy of England and the United States. Under the laws of the English-speaking nations, marriage is a civil contract, not a sacrament. Many reasons suggest themselves to the thoughtful mind why a wise and enlightened public should encourage and enforce voluntary agreements of sepa-

ration between husbands and wives, whose wranglings, quarrels, and domestic infelicities have rendered their homes places of torment to themselves, and of discontent and misery for their children.   *   *   *   Reported decisions of the courts announced the same conclusions (of the English courts), and enforced the performance of these contracts, until in 1869, in *Walker* v. *Walker's Ex'or,* 9 Wall. 743-750, 19 L. Ed. 814, Mr. Justice Davis, in delivering the opinion of the supreme court declined to discuss the question, and declared that: 'Contracts of this nature, for the separate maintenance of the wife, through the intervention of a trustee, have received the sanction of the courts of England and of this country for so long a period of time that the law on the subject must be considered as settled.'   *   *   " Further, says the opinion: "They say that the contract is void, and constitutes no defense to this suit, because it was not made through the intervention of a trustee.   But the only reason why a trustee was ever essential to such agreements was that under the common law the wife was disabled from contracting directly with her husband, and from bringing suits in her own name.   Nevertheless, even under the common law, an agreement of separation without the intervention of a trustee was valid and enforceable in equity; and under the statutes of Colorado, which empower the wife to make any contract with any person, since the reason of the rule has entirely ceased, the rule no longer prevails.   *   *   *   " See also *Grime* v. *Borden,* 166 Mass. 198, 44 N. E. 216; *Fox* v. *Davis,* 113 Mass. 255, 18 Am. Rep. 476; *Squires* v. *Squires,* 53 Vt. 208, 38 Am. Rep. 668; *Randall* v. *Randall,* 37 Mich. 563 (the opinion by Cooley, C. J.); *Henderson* v. *Henderson,* 37 Or. 141, 60 Pac. 597, 61 Pac. 136, 82 Am. St. Rep. 741, 48 L. R. A. 768; *Carey* v. *Mackey,* 82 Me. 516, 20 Atl. 84, 9 L. R. A. 113, 17 Am. St. Rep. 500; *Duryea* v. *Blevin,* 122 N. Y. 567, 25 N. E. 908.

In the last-named case, the court says: "It is settled in this State that a contract between husband and wife who have separated, to thereafter live apart, is not void on the ground

of public policy." And in *Henderson* v. *Henderson, supra,* the court in its opinion pertinently remarks: "The more recent legislation has tended strongly to the removal of all disabilities of the wife which do not exist as to the husband, and she may now contract and incur liabilities and responsibilites, to the same extent and in the same manner as if she were unmarried. * * * While this fact should not detract from the reasons which support an allowance for her benefit, yet it is a strong circumstance tending to the support of her contracts relative to her maintenance made with her husband, who has always been accounted *sui juris."*

The courts of Texas, Iowa, Maryland, Montana, Arkansas, California, Georgia, Illinois, Ohio and Pennsylvania are, as our investigation discloses, in line with the courts whose decisions we have adverted to.

While it was said in *Switzer* v. *Switzer,* 26 Gratt. 574, that agreements between husband and wife for separation have never been passed upon by any court of last resort in this State, and, therefore, the question was *res integra* with us, the opinion by Staples, J., recognizes that the subject has received the fullest consideration in England, and that the decisions there hold that such agreements, in so far as they provide that the husband and wife shall live apart, will not be enforced by the courts, upon grounds of public policy; but that the contract is valid, so far as it relates to the trusts and covenants by which the husband makes a provision for the wife, and the indemnity given to the husband by the trustees for the wife. Quoting from 2 Story's Eq. Jur., the opinion further says: "In the next place, a deed for immediate separation, with the intervention of trustees, will not be enforced, so far as regards any covenant of separation, but only so far as maintenance is covenanted for by the husband, and the trustees covenant to exonerate him from any debts contracted therefor."

In *Hansberger* v. *Alger,* 31 Gratt. 52, the court also found it unnecessary to pass upon the general validity of deeds of

separation; but in the opinion, the learned Judge Burks, discussing the subject with his usual clearness and precision, says, that such contracts are valid, at least to the extent that they make a provision for the wife's maintenance and support; citing a number of authorities in support of the statement. And further: "I do not deem it necessary, in this case, to enter at large upon the discussion of the general question of validity of deeds of voluntary separation between husband and wife. The books abound in discussion of this question by judges and law-writers, and the weight of authority would seem to be that, while courts will give no countenance or aid to either party in carrying into execution an independent executory agreement to live apart, because such an agreement is considered as against public policy, yet they will generally uphold and enforce against the husband such conveyances and covenants as he may have made for the maintenance of his wife, provided the separation has actually taken place, or is contemplated as immediate, and the provision for the wife is made through the intervention of a trustee, and the parties have not subsequently come together again."

Since the legislatures of various States have enacted laws whereby the wife is given the rights and powers of a *femme sole,* almost as completely as if she were unmarried, being given the unqualified right "to contract and be contracted with, sue and be sued, in the same manner and with the same consequences as if she were unmarried;" the statute of no State having gone farther with respect to the rights, etc., of a married woman than our own (sec. 2286a, Va. Code, 1904)—it is now not essential to the validity of such a contract as we have before us that the provision for the wife be made through the intervention of a trustee.

Prof. Minor, recognizing the tendency of the courts to uphold deeds of separation, says, at p. (218), 318, 1 Min. Inst., that such deeds are now regarded as valid in respect to the property arrangements which they contemplate. See also 1 Bish. Mar. Div. & Sep., secs. 1278, 1312.

The contract under consideration, contains a number of distinct provisions dealing with wholly distinct interests. These provisions are not, as contended on behalf of plaintiff in error, mutually dependent, but are clearly separable; therefore, even if the provision to live separate and apart were contrary to public policy and not enforceable, that would not destroy the other provisions of the contract adjusting property rights and providing a maintenance for the wife. Though the former may be rejected, the latter remains valid and enforceable. In addition to the authorities already adverted to, the case of *Luttrell* v. *Boggs,* 168 Ill. 361, 48 N. E. 171; and *Galusha* v. *Galusha,* 116 N. Y. 635, 22 N. E. 1114, 15 Am. St. Rep. 453, 6 L. R. A. 487, are in point.

Passing, then, from the question, whether or not the contract under consideration is void because contrary to public policy, we come to the second, which is, whether or not the contract was made voidable at the election of plaintiff in error, because of an "anticipatory breach" by the defendant in error.

Whether or not defendant in error had, by her conduct, justified plaintiff in error in treating the contract as terminated, was a question for the jury, and their finding was rightly against his contention. It appears that after the contract had been lived up to by both parties, with respect to the custody of their boy, until September, 1904, when plaintiff in error being entitled, under the contract, to have the boy turned over to him, his sister, Miss Moreland, went, as she had on former occasions, to Kentucky for the boy, and owing to the miscarriage of a letter, and consequent confusion about a place of meeting, there arose such a serious disagreement between Miss Moreland and the defendant in error, that she told Miss Moreland she could not submit to another such unpleasantness as then occurred, and therefore would, in the future, deliver the boy to his father only. Later there was some correspondence between defendant in error and plaintiff in error on this subject, but nothing was said to justify the belief on the part of plaintiff in error that defendant in error intended in the future to refuse to give up

the boy, as she had agreed. All that could be reasonably inferred from what she said is that she would decline to deal with an objectionable medium of exchange, and would herself deliver the boy to plaintiff in error, a right she clearly had if she chose to exercise it. In fact, the claim that plaintiff in error afterwards set up that defendant in error broke her contract in September, 1904, is wholly at variance with his conduct for some time thereafter, which indicates very clearly that the claim was an afterthought, not brought forward till he was called on to make defense to this suit. He continued after the date of the alleged breach to pay defendant in error, according to the contract, the monthly installments for her maintenance up to December 15 following, and thereafter paid her each month, till September 15, 1905, only $25, resting his right to reduce these monthly payments required by the contract, not upon the ground of a breach thereof on the part of defendant in error, but on account of a reduction in his own yearly income. On November 15, 1904, nearly two months after the unpleasantness between defendant in error and Miss Moreland, and after she had written him that the boy would in the future be delivered to his father only, plaintiff in error writes her that he had been advised that the contract was null and void, and not binding on either party, saying nothing whatever about any "anticipatory breach" on her part. On the contrary, he declared that he would not live up to the contract, and would keep the boy with him, but would, as a duty a husband owed to his wife, continue to provide for defendant in error as well as his means would admit, and send her money monthly.

Conceding that the doctrine of "anticipatory breach" applies to contracts like the one before us, plaintiff in error utterly fails to show himself entitled to invoke its protection.

Section 3286 of the Code provides, that in an action of *assumpsit* on a contract for the payment of money, if the plaintiff file with his declaration an affidavit stating the amount of his claim, etc., no plea in bar shall be received in the case,

either at rules or in court, unless the defendant file with his plea an affidavit that the plaintiff is not entitled to recover, etc.

Defendant in error did, at first June rules, 1906, file with her declaration the affidavit required by the statute, verifying her claim; and plaintiff in error thereafter, but at the same rules, orally directed the clerk to enter for him a plea of *non assumpsit,* and lodged with the clerk the counter affidavit as authorized by the statute; and the case was put upon the issue docket for trial at the next term of the court. When the case was called for trial, defendant in error moved the court to enter judgment in her favor for the amount claimed in her declaration, on the ground that plaintiff in error did not file his plea and affidavit, as required by the statute, *supra,* in order to prevent such judgment for defendant in error; but the court, considering that the plea and affidavit, as entered by the clerk by direction of defendant in error's counsel, were sufficient to warrant a writ of inquiry, overruled said motion, and this ruling, to which exception was duly taken, is assigned by defendant in error as cross error, under Rule IX of this court.

The point made by counsel for defendant in error is, that because this plea of *non assumpsit* was not in writing filed with the clerk, the statute was not complied with, and, under the authorities relied on, mainly *Lewis* v. *Hicks,* 96 Va. 93, 30 S. E. 466, and *Price* v. *Marks,* 103 Va. 18, 48 S. E. 499, the motion to strike out the plea and affidavit and enter judgment for the amount of the claim sued for should have been sustained.

The authorities cited do not sustain this view.   *Lewis* v. *Hicks, supra,* went off on the ground that, although the plea of the statute of limitations was by the defendant interposed at rules in an informal manner, the requirements of the statute being manifestly imposed for the benefit of the plaintiff, the benefit might be waived by him, and where the clerk, by direction of the defendant, pleaded the statute of limitations, however informally, and the plaintiff *took issue,* either of law or fact, upon it, the plea was rightly considered as filed, and

operated to set aside the office judgment. In *Price* v. *Marks, supra,* the plaintiff complied with the statute by filing with his declaration at rules the necessary affidavit, while the defendant presented no plea at rules; wherefore an office judgment for the plaintiff should have been entered by the clerk, but, instead, the case was put upon the issue docket for the succeeding term, beginning April 14, 1903, at which term the defendant filed two pleas, one the general issue and the other the statute of limitations, but neither of these pleas contained the affidavit required by the statute (3286, *supra*). No order was entered at the April term, except an order noting the filing of said pleas, and without an order of continuance the case went over to the October term. At the last named term, the plaintiff moved the court to strike out the pleas filed by the defendant at the preceding April term, and to enter such judgment as should have been entered had said pleas not been filed, upon the ground that the pleas were not sworn to, as required by the statute; but this motion was overruled, and the case continued to a subsequent term at which the motion was again made and again overruled; whereupon there was a verdict and judgment for the defendant. Upon a writ of error to that judgment, this court reversed it, set aside the verdict of the jury and entered judgment for the plaintiff, for the reason that, as the defendant did not, as required by the statute, file an affidavit with the pleas she presented at the preceding April term, her pleas were, in legal effect, a nullity, and the case stood as though the pleas had not been filed; so that the plaintiff was entitled to an office judgment at rules for the amount of his claim, becoming final at the end of the next succeeding term of the court. That case is wholly different from the case at bar.

While the affidavit contemplated by the statute is necessarily put in writing, it is not so as to a plea in bar of an action, and according to the practice obtaining in this State, as far as we are advised, such a plea, except in rare cases, is not put in writing, nor does the statute require it.

As said by Lewis, P., in *Griggs* v. *Dalsheimer,* 88 Va. 508, 13 S. E. 993, cited in *Price* v. *Marks, supra,* the express provision of the statute is "that no plea shall be *received,* unless accompanied by an affidavit;" and the practice is, that the clerk, if directed by the defendant or by his counsel at rules, in a case like this, enters a plea in bar upon his rule book. If such direction be given in open court, the plea is noted on the order book, and in either case, if the affidavit required by the statute is offered, it is received, endorsed as filed by the clerk, and put with the other pleadings, etc., in the case. The language of the statute is not that the defendant shall file his plea accompanied by an affidavit, etc., but that he shall *file with his plea* the affidavit of himself or his agent, etc. There is nothing whatever in the plain wording of the statute to be interpreted as a requirement that the plea of *non assumpsit* noted by the clerk in this case upon his rule book, as well as the affidavit in verification of the plea received and filed by the clerk at the same rules, should have been in writing; and it is inconceivable that such an interpretation of the statute could serve any good purpose.

The point is made by another cross assignment of error, that the lower court, "upon admitted or indisputable facts," committed palpable error of law in instructing the jury that they *must* cut off $269.58 of the claim of defendant in error sued for, and that this court should amend the judgment in this respect, and as amended affirm it; but, if this be error, we could only reverse the judgment and remand the cause to the lower court with directions, that, unless plaintiff in error will agree to the entry of a judgment in favor of defendant in error for the full amount of her claim, the verdict be set aside and a new trial awarded. *Buena Vista Co.* v. *McCandlish,* 92 Va. 306, 23 S. E. 781. And as we are not asked to do this, no further consideration of this cross assignment of error is necessary.

The judgment of the lower court is affirmed.

*Affirmed.*