# Richmond

## Jones Shelton v. Elizabeth F. Stewart, Et Als.

December 3, 1951.

Record No. 3820.

Present, Hudgins, C. J., and Eggleston, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Martin A. Martin* and *Samuel H. Allen,* for the appellant.

*. W. E. Neblett,* for the appellees.

Miller, J., delivered the opinion of the court.

In this suit appellant, Jones Shelton, sought to enforce specific performance of a written contract whereby appellee, Elizabeth F. Stewart, agreed, for a consideration of $900, to convey to him sixty acres of land. The relief prayed for was refused and this appeal awarded.

On April 9, 1949, when the agreement between the parties was entered into, Elizabeth F. Stewart was estranged from her husband, Calvin Stewart, and he did not sign the contract. His whereabouts was then unknown, and she had some months prior thereto instituted suit for divorce against him, but process in that proceeding had not been executed.

The contract in question provided that on or before December 31, 1949, a deed with general warranty of title and English covenants, signed by Elizabeth F. Stewart "and all other necessary parties," conveying the property in fee simple, would be executed and delivered to the vendee, and concluded with the following paragraph:

"The vendor hereby covenants and agrees that if her husband cannot be found, or if found, refuses to sign the necessary deed, she will institute and conduct at her own expense, such suit or suits as may be necessary to deliver a clear and unencumbered title to the above described property to the purchaser."

Prior to November 25, 1949, Calvin Stewart and his wife

became reconciled and resumed matrimonial relations. On November 28, 1949, he wrote, signed and forwarded to appellant a letter in which, among other things, he stated:

"Just a few lines to let you know what to do you can go heard with the place I will not give you any trouble I will bring you a clear dead when I hear from you and Elizabeth I dont want any trouble with any body."

However, before December 31, 1949, both Elizabeth F. Stewart and her husband definitely decided that they would not execute the deed, for on December 12, 1949, she wrote to appellant and so advised him.

Shortly after receipt of that communication, appellant instituted this suit for specific performance against Elizabeth F. Stewart and her husband. He offered to pay the purchase price of $900; alleged that Calvin Stewart had, by his letter of November 28, 1949, ratified the contract of April 9, 1949, and prayed that appellees be required to perform the agreement by execution of a "good and sufficient deed to your complainant." In event Calvin Stewart could not be required to join in the deed, then appellant prayed that Elizabeth F. Stewart be ordered to execute a "good and sufficient deed with general warranty of title" and required to pay such sums of money as would adequately compensate him for her failure to perform each and every covenant of the agreement. However, by subsequent amendment to the bill of complaint, appellant sought to obtain a deed from Elizabeth F. Stewart without abatement in the purchase price in event her husband was not required to join therein.

After all the evidence had been concluded and without expressly determining whether or not the letter of November 28, 1949, from Calvin Stewart to appellant constituted a ratification of the contract of April 9, 1949, the court concluded that the intent, purpose and effect of the covenant and condition in the contract were that Elizabeth F. Stewart should sue for and obtain a divorce from her husband; or coerce him into signing the deed; that it was an agreement and covenant against public policy and was not severable from other parts of the contract, and thus it rendered the entire agreement void. It thereupon denied the relief prayed for and dismissed the bill.

We need not determine what was the legal purport and effect of the letter of November 28, 1949, from Calvin Stewart

to appellant, for, in our opinion, the Chancellor committed no error when he concluded that the covenant in question was against public policy, was not severable from other material parts of the contract, and thus rendered the entire instrument void from its inception.

Consummation and performance of the contract was dependent upon the relinquishment or obliteration of Calvin Stewart's inchoate right of curtesy. That being true, it was the evident purpose and intent of the parties that the covenant be deemed a condition imposed upon Elizabeth F. Stewart, and an undertaking on her part to sue for and obtain a divorce from her husband, which would enable her on or before December 31, 1949, to execute a deed in which it would not be necessary that he join, or by that date coerce him into signing the deed. By its express terms, the contract was conditioned upon vendor's prior compliance with the requirements of the covenant.

Being married, Elizabeth F. Stewart's ability to accomplish that undertaking necessarily demanded that she obtain her husband's signature to the deed, or that she institute and conduct a suit that would render his execution thereof unnecessary. Upon his refusal to join in the deed, that vital condition might be accomplished only through the successful culmination of a suit for divorce, and this was known to and thus necessarily contracted for by the parties.

"The rule is well established that any agreement whether between husband and wife or between either and a third person intended to facilitate or promote the procurement of a divorce is contrary to public policy and void. Though an agreement made in contemplation of a divorce often contains other provisions which, standing alone, are not invalid, yet when the general purpose of the agreement or some of its provisions is to facilitate the procuring of a divorce, the courts notwithstanding the existence of legal grounds for divorce, have refused to enforce any part of the agreement. Agreements conditional on divorce are likewise generally held to be against public policy." 17 Am. Jur., "Divorce and Separation," Sec. 14, p. 156.

"Contracts so framed as to have effect only on condition that a divorce between the parties should be granted are held illegal, as their object is to interest the party to be benefited in procuring or permitting a divorce. So a promise to marry made by

a man or woman already married, to take effect when he or she has obtained a divorce from his or her present spouse, is illegal and void." 17 C. J. S., "Contracts," Sec. 235(a), p. 617.

The reasons for holding such agreements void are given as follows in an annotation found in 130 A. L. R. p. 1008:

"The public policy rendering such agreements void is the policy to foster and protect marriage, to encourage the parties to live together, and to prevent separation, marriage being the foundation of the family and of society, without which there would be neither civilization nor progress."

This announced public policy is adhered to and stated thus in the following decisions and text books:

"If, as the court found, it was of the essence of the agreement, although not stated therein, that plaintiff should obtain a divorce from the defendant, and the promises of the defendant were made in contemplation of and to facilitate, and conditioned upon, a dissolution of the marriage, that fact bars a recovery by plaintiff in a suit based on the contract." *Brown* v. *Brown,* 8 Cal. App. (2d) 364, 47 P. (2d) 352, 353.

"Contracts to facilitate divorces are in derogation of marriage and are very generally held invalid on grounds of public policy." Keezer on Marriage and Divorce, Sec. 184, p. 230.

"Therefore any agreement for divorce, or any collateral bargaining promotive of it, is unlawful and void." 2 Bishop on Marriage, Divorce and Separation, Sec. 696, p. 286.

Though the precise question at hand does not appear to have been determined in this State, the decision of *Cumming* v. *Cumming,* 127 Va. 16, 25, 102 S. E. 572, dealt with an antenuptial contract, the object and result of which was to facilitate and promote a separation of husband and wife after marriage. That agreement was held to be against public policy and void. It is there said:

"As appears from the facts set forth in the statement preceding this opinion the specific object and the actual result of the antenuptial contract was to encourage or facilitate a separation after the marriage. Such a contract is illegal and void. Hence it is not binding upon and cannot be enforced against either party."

Nor is the objectionable paragraph divisible or severable from the other material parts of the agreement.

■ "Primarily, the question of whether a contract is entire or severable is one of intention, to be determined from the language which the parties have used and the subject matter of the agreement." 17 C. J. S., "Contracts," Sec. 332, p. 788.

■ "As a general rule it may be said that a contract is entire when by its terms, nature, and purpose it contemplates and intends that each and all of its parts and the consideration shall be common each to the other and interdependent." 17 C. J. S., "Contracts," Sec. 331, p. 785. *Eschner* v. *Eschner*, 146 Va. 417, 131 S. E. 800.

■ Tested by the above general rules of construction, it is evident that the contract was indivisible for it required that a deed be delivered to the vendee signed and executed by all necessary parties and conveying fee simple title before he could be required to perform his undertaking.

The covenant was of the essence of the agreement. Its purpose and effect was to invite, encourage and require a continued estrangement of husband and wife, and their ultimate permanent separation through divorce. It was thus against public policy and rendered the entire contract void from its inception. The decree appealed from is

*Affirmed.*