## Richmond

Florence Marshall Ryan v. William H. Griffin.

April 28, 1958.

Record No. 4808.

Present, All the Justices.

The opinion states the case.

*J. Randolph Davis* (*Davis & Boyd; Wolcott, Wolcott & Payne,* on brief), for the appellant.

*Robert W. Arnold, Jr.* (*Carlton E. Holladay*, on brief), for the appellee.

BUCHANAN, J., delivered the opinion of the court.

The question for decision in this case is whether the court below erred in sustaining a demurrer to the appellant's amended bill and dismissing her suit.

The amended bill was filed, after the court had sustained a demurrer to the original bill, by the appellant, Florence Marshall Ryan as sole devisee of her mother, Elizabeth J. Griffin, deceased, against William H. Griffin, to enforce a contract dated June 13, 1955, between William H. Griffin and Elizabeth J. Griffin, who were then husband and wife.

This contract, which was made part of the amended bill, recited that the parties "are estranged and will in the future live separate and apart, but are desirous of settling all of their property and other marital rights existing by virtue of the marriage". By its terms the husband agreed to release and convey to his wife, or her assignee, all of his right, title and interest, "being a one-half undivided interest with survivorship" in the house and lot known as No. 3825 Bowdens Ferry Road, in the city of Norfolk, with the household furniture and equipment therein; and the wife agreed to release and convey to the husband her like interest in No. 3819 on said Road, with the household furniture and equipment therein.

The contract states that "this settlement and division of real property shall be in full settlement and satisfaction of all marital rights existing between the parties and owed to each other by virtue of the marriage, and specifically is in full settlement of the wife / sic / claim to alimony and support, and is in lieu thereof".

The amended bill made the following allegations:

Prior to the death of Elizabeth J. Griffin she and her husband had lived in the property at No. 3819 Bowdens Ferry Road until June 13, 1955 (the date of the contract). Her husband had been guilty of cruelty towards her, had cursed and abused her to such an extent that her health was endangered. She suffered from a severe heart condition and her physician advised her that continued cohabitation with her husband would probably result in serious bodily harm, if not death, to her. Upon that advice she determined to separate herself from her husband and on or about June 13, 1955, she left the

premises at No. 3819 and went to live with her daughter (the appellant).

The amended bill further alleged that upon the separation of the parties it was agreed between them that the survivorship provision in the deed to them for said properties should be abolished, and one would take over one of the properties and the other would take over the other property, and the contract of June 13, 1955, was accordingly executed for this purpose, and both parties were to execute all deeds and papers necessary to effectuate the agreement.

Further, that it was the intention of Elizabeth J. Griffin to bring a suit against her husband and obtain a divorce from him on the ground of cruelty, but she died on June 24, 1955, and from June 13, 1955, to that date she was too ill to consult an attorney with reference to bringing the suit for divorce.

The amended bill further alleged that Elizabeth J. Griffin and her husband were estranged and had not cohabited as husband and wife but had been occupying separate accommodations at No. 3819 for some time prior to June 13, 1955, and the separation which occurred on that day was not pursuant to any agreement to separate but was the result of medical advice given to the wife that continued cohabitation with her husband would be detrimental to her health and probably result in serious bodily harm to her; and the bill charged that the defendant was guilty of conduct toward his wife which was tantamount to cruelty and willful desertion and justified her in leaving the home and entitled her to a divorce *a mensa* had she lived to bring suit therefor; and that the agreement between the parties with reference to the real property, particularly so far as it operated to extinguish the survivorship provision with respect thereto, should be confirmed.

The prayer of the amended bill was that the agreement of June 13, 1955, be given effect and that the defendant, William H. Griffin, or a commissioner of the court, be directed to execute a deed in conformity with the agreement. After this appeal was granted the death of William H. Griffin was suggested and J. Walter Griffin, alleged to be his executor and sole devisee, has been substituted as appellee. Code § 8-148.

The court below sustained the defendant's demurrer to this amended bill on the ground "that the contract upon which this suit is based is contrary to public policy, unlawful and void". This, the appellee states, was upon the view that the contract was for the pur-

pose of facilitating a separation of the husband and wife and the promotion of a divorce. The defendant also asserted in the demurrer that neither the husband nor the wife had such a right in the properties as could be conveyed, but this point is not argued in appellee's brief and could not be sustained in the light of § 55-9 of the Code and the holding in *Vasilion* v. *Vasilion*, 192 Va. 735, 66 S. E. 2d 599.

■ If in fact or in effect the contract facilitated or promoted separation or divorce it was void. "A contract that is entered into before separation of the parties and which facilitates or promotes separation or divorce is void." *Walliban* v. *Hughes*, 196 Va. 117, 123, 82 S. E. 2d 553, 558. That has been the law in this State at least since *Cumming* v. *Cumming*, 127 Va. 16, 102 S. E. 572, decided in 1920, and has been restated in more recent cases: *Shelton* v. *Stewart*, 193 Va. 162, 67 S. E. 2d 841; *Anderson* v. *Anderson*, 196 Va. 26, 82 S. E. 2d 562; *Arrington* v. *Arrington*, 196 Va. 86, 82 S. E. 2d 548; *Higgins* v. *McFarland*, 196 Va. 889, 86 S. E. 2d 168.

As pointed out by Mr. Justice Miller in *Shelton* v. *Stewart*, *supra* (193 Va. at 166, 67 S. E. 2d at 843):

" 'The public policy rendering such agreements void is the policy to foster and protect marriage, to encourage the parties to live together, and to prevent separation, marriage being the foundation of the family and of society, without which there would be neither civilization nor progress.' "

■ We have no disposition to change or relax the established rule. The question here is whether this contract when considered in connection with what the bill states to have been the facts surrounding its execution, to be taken as true on the demurrer, comes within the compass and condemnation of the rule.

In *Cumming* v. *Cumming*, *supra*, the contract did not show an illegal purpose but such purpose appeared from other evidence in the case; and in that case it was observed that postnuptial contracts which contemplated an immediate separation for some ground existing prior to the contract, sufficient of itself to bring about a separation, are upheld in most jurisdictions upon the principle that the parties have already irrevocably determined upon a separation for a pre-existing cause and the upholding of the agreement as to property rights does not in such cases encourage or facilitate the separation. 127 Va. at 30, 102 S. E. at 576. The same principle was stated in *Arrington* v. *Arrington*, *supra*, 196 Va. at 94, 82 S. E. 2d at 552.

In the older case of *Moreland* v. *Moreland*, 108 Va. 93, 60 S. E.

730, reference was made to the recognized distinction between a promise to separate in consideration of money and an agreement as to property rights where the separation had already taken place, and it was said: "The first is uniformly held not to be binding; while the second is, with equal unanimity declared valid and enforceable." 108 Va. at 96, 60 S. E. at 732.

In *Wallihan* v. *Hughes, supra,* (196 Va. at 125, 82 S. E. 2d at 559), we said:

"It has been common practice in divorce suits for courts having jurisdiction of the parties to decree their rights and interests as fixed and agreed upon in a fair and equitable postnuptial contract that does not facilitate separation or divorce. That such a contract can be entered into and is binding upon the parties is generally recognized."

The practice is now sanctioned by statute and no decree for the payment of alimony, suit money or counsel fee may be entered except in accordance with such contract (to be filed with the pleadings or depositions), unless the party to whom such relief might otherwise be awarded raises objection prior to the entry of the decree. Code § 20-109.

We said, too, in the *Wallihan* case that the law looks with favor upon the making of contracts between competent parties upon valid consideration and for lawful purposes, and "courts are averse to holding contracts unenforceable on the ground of public policy unless their illegality is clear and certain." *Cf. Higgins* v. *McFarland, supra,* 196 Va. at 893-4, 86 S. E. 2d at 171.

The contract in the present case, as noted, states that the parties are estranged and will in the future live separate and apart. It does not say when the estrangement occurred or for what cause. It does not say that they will live separate and apart in the future as the result of any agreement. It does not state any fact which shows or creates a necessary inference that they had agreed upon a separation and divorce, or that the agreement made was intended to aid or would have the effect of aiding the wife to obtain a divorce. The agreement was for a settlement and division of their property which they could make and abide by even though no divorce was ever sought by either.

The appellee says that the clause in the contract quoted above, to the effect that the settlement and division of the real property was to be in full settlement of all marital rights which the parties owed to each other by virtue of the marriage, shows that the purpose of the

parties was to bypass the courts and settle all marital rights arising from the marriage; in effect, to oust the courts of jurisdiction and to settle by agreement the right to and terms of a divorce. We do not so construe that language. It is hardly to be supposed that the parties intended so futile a thing and the amended bill specifically alleges that the wife planned to submit her cause promptly to the court.

They owned two parcels of land, so conveyed to them that at the death of one the other became sole owner. They agreed to abolish this provision so each could take one of the properties in severalty and to make deeds accordingly. When that was accomplished marital rights in the individual properties might still be asserted and also certain personal property was involved. The clause of the contract in question seeks to make it plain that the settlement being made was to include all property rights by virtue of the marriage as well as property rights under the deed. The allegations of the bill are to the effect that nothing more than property rights was contemplated in the contract.

The law in keeping with the divine plan desires the husband and wife to live together in harmony and as one. But the law cannot prevent their living separate and apart if they determine to do so, nor does it interfere in that event if they agree on a division of their property so long as their agreement was not for an illegal purpose. The law will examine their contract closely and if it appears that it was part of a scheme to effect a separation or obtain a divorce by agreement, where legal grounds therefor did not previously exist, the agreement will be declared a nullity.

If the appellant can establish the allegations of her bill and show by proper evidence that this contract was not made to facilitate a separation or to aid in procuring a divorce, but was in fact an agreement to settle property rights consequent upon a divorce which the wife was entitled to have for causes already existent and according to a purpose already formed independently of any agreement or cooperation on her husband's part, then it was not contrary to established public policy and void for that reason.

We think the court should hear the evidence on that issue before there is a final determination of the merits of the appellant's claims, and that the demurrer should have been overruled. The decree sustaining the demurrer is accordingly reversed and the cause remanded for further proceedings.

*Reversed and remanded.*